COTTON STATES LIFE INSURANCE COMPANY *v.* TANNER.

Opinion delivered January 20, 1930.

878

*Sheffield & Coates,* for appellant.
*W. G. Dinning,* for appellee.

MEHAFFY, J. Appellee filed suit in the circuit court of Phillips County, alleging that an insurance policy had been issued to Saborn D. Pruitt; that Pruitt died, and that he, Tanner, was the administrator of the estate of said Pruitt. The policy was for $2,000. He alleged that the policy was in force at the time of Pruitt's death, and that due notice of his death was given to the appellant.

Appellee alleged that Pruitt had given a note for the first year's premium of $73.40, and that there had been paid on the said note $28.32; that payment had been demanded of said insurance company, and had been denied. The insurance policy was filed, and appellant filed a demurrer on the ground that the complaint alleged that, at the time of the delivery of the said policy the assured executed and delivered to the appellant his note for $73.40 as payment for his first annual premium, and thereafter made payment of the sum of $28.32 to be applied toward the satisfaction of said note, while the policy itself provided that the same should not take effect until the first premium had been paid in cash to the company, and the policy actually delivered to the insured, during his lifetime and in good health.

The court overruled the demurrer, and the appellant filed answer, denying all the material allegations in the complaint. Appellant alleged in its answer that proof of death had not been made, and also that the policy was issued to Pruitt upon the regular monthly plan for a cash premium, and that the policy lapsed for nonpayment of premiums prior to the death of Pruitt.

There was a verdict and judgment in favor of appellee, and appellant filed a motion for a new trial,

which was overruled, and an appeal prosecuted to this court.

The appellant contends that the court erred in permitting witnesses, Tanner and Gatchell, to testify as to statements made by Green in their attempt to show that Green was appellant's agent. There is no principle better established than the principle that you can neither prove agency, nor the extent of an agent's authority by his declarations. *American So. Trust Co.* v. *McKee,* 173 Ark. 147, 293 S. W. 50; 1 Mechem on Agency, § 285.

This evidence, however, could not have been prejudicial because the appellant introduced the contract of agency. This contract, made on the 8th day of May, 1925, shows that H. C. Green is the district agent of appellant, and that the district of Green embraced several counties. There was therefore no question about his agency, unless the agency contract had been terminated. The appellant contends that the contract had been terminated by giving the agent notice, as required by the contract. The contract is quite lengthy, but it is claimed that it was terminated as provided in paragraph 23. That paragraph reads as follows:

"Unless otherwise terminated, this agreement may be terminated by either party, by a notice in writing, delivered personally, or mailed at the last known address at least thirty days before the date therein fixed for such termination."

It is contended that notice under the provisions of the above paragraph was given by telegram of September 7, 1926. The telegram, addressed to H. C. Green, Helena, Arkansas, is as follows:

"Write no more business Cotton States Life, as we are withdrawing from that section of Arkansas. Please instruct all your agents. We are writing you today. A. H. Hammons, Agency Manager."

The letter, dated the same day as the telegram, and addressed to H. C. Green, Helena, Arkansas, reads as follows:

"I was instructed at a meeting this morning to write you this letter. We had our actuary with Mr. McCabo, Dr. Dailey, Mr. Binkley, and myself, and went over the Arkansas business, figuring the drive you had last year, and, figuring the excess mortality, the company has been at a great deal of loss in your section of Arkansas. All of the applications that you all have sent in, in the last ten days, have been carefully examined, and worked over, and we find that it will be impossible for us to issue this business. Please instruct your agents not to write any more business for the Cotton States Life, and I am inclosing all applications to date that were sent in. Please send in your contract and all supplies, as we are going to withdraw from that section of Arkansas at this time. I am, naturally, very sorry that we have had to take this action, but we feel that now is the best time to withdraw from that part of the State. Experience has shown us that we have constantly lost money in Arkansas. You can mail your supplies and your contract back to us express, C. O. D. Be sure and instruct your agents not to write any more business for the Cotton States Life, as we do not want the medical expense of having them examined, and then return the applications. When do you think you will be able to settle your account, as we have been severely criticised by the way we have handled it?

"With kindest regards, I am, Yours very truly, Agency Manager."

This letter and telegram purported to be copies found in the files among the papers of the appellant. E. O. Binkley, the witness, who testified for appellant, stated that he resided in Louisville, Kentucky, and is connected with the Inter-Southern Life Insurance Company, and, as a part of his duties, handles the records of the Cotton States Life Insurance Company; that he had, in his possession, all of the records pertaining to the policy of Saborn D. Pruitt; that from the 8th day of May, 1925, until September 7, 1926, one H. C. Green

was acting as their agent in this territory. Witness then identified the agent's contract, and it was introduced in evidence. How this witness got possession of the records of Cotton States Life Insurance Company, is not shown. He does not testify as to having any connection with that company, except that a part of his duties with the Inter-Southern Life Insurance Company is that he handles the records of the Cotton States Life Insurance Company.

There is no evidence that either the telegram or the letter was ever mailed, nor is there any evidence that either of them was ever written. The only testimony is that this witness, Binkley, says, he found them in the files. He did not hear either the telegram or letter dictated; he never saw either one, and did not know that they were sent. He could not have known that either of them was sent, because he never saw either one of them, and never saw the letter mailed, or the telegram sent. He testifies that they never heard from Green; he did not respond to either the telegram or the letter, and he does not know that he ever received either.

The contract provides that the notice shall be either delivered in person or mailed, and there is no proof that either was ever done. Therefore, there is no evidence that any notice was ever given to Green terminating the contract. But, if the letter and telegram had both been sent, this would not have terminated the agency contract. The paragraph relied on provides that at least 30 days' notice must be given before the date therein fixed for such termination. Necessarily, to give a proper notice under this contract, the notice would have to fix the date for the termination. Even if these had been sent, they would not do that. Moreover, it did not say the contract was terminated, or would be at any particular time, but simply stated to him to not write any more business.

Appellant's witness testifies that they never heard from Green after the date of the telegram and letter, and, so far as the record shows, they had no communica-

tion whatever with him. He does not know whether he sent in his contract and supplies or not.

Appellant introduced the contract, showing the agency of Green, and showing the manner in which it might be terminated, and the total absence of any evidence, tending to show that it was terminated, justifies the conclusion that Green was, at the time, the agent of the appellant.

Appellant contends that the court erred in refusing to instruct the jury to find for the defendant at the close of plaintiff's testimony. It is true that the contract had not, at this time, been introduced, but the evidence shows that Green occupied an office, and the sign on the office was, "Cotton States Life Insurance Company"; that he acted as the agent; that he procured applications for insurance, and that policies were issued on said applications, and appellant alleges in his answer that the policy delivered to Saborn D. Pruitt had lapsed for nonpayment of premiums due. The application was made to Green, as agent of the company, and the policy issued. The evidence showed that the policy was issued; that $28.32 had been paid, and, in fact, the policy itself was filed at the request of the appellant. This, together with all the evidence with reference to the payment of premiums, and the death of Pruitt, was sufficient to justify the court in refusing to direct a verdict at the close of plaintiff's testimony. But, when the court refused to do this, the appellant then introduced evidence, and the court did not err in its refusal to direct a verdict for the appellant.

It is also contended that the court erred in refusing to direct a verdict for appellant, because of plaintiff's failure to show that proof of death had been filed, as required by the policy. One answer made by appellee to this contention is that Green, the agent, denied liability, and, liability having been denied, no proof of death was necessary. Green was a district agent, his agency embracing several counties.

This court recently said: "It is first contended that the decree should be reversed, because the proof of loss was not filed within the time prescribed by the policy. The compliance with this provision of the policy was expressly waived by the local agent of the insurance company, who issued the policy and delivered it to the insured. The local agent had authority to issue fire insurance, write and deliver policies and collect premiums, and to notify the insurance company of loss. Having been clothed with these powers, he had *prima facie* authority to waive presentation of proof of loss." *London & Lancashire Ins. Co., Ltd.,* v. *Payne, ante* p. 638; *National Union Fire Ins. Co.* v. *Wright,* 163 Ark. 42, 257 S. W. 753; *Globe Ins. Co.* v. *Payton,* 128 Ark. 528, 194 S. W. 503; *National Union Fire Ins. Co.* v. *Crabtree,* 151 Ark. 561, 237 S. W. 97; and *Citizens' Fire Ins. Co.* v. *Lord,* 100 Ark. 212, 139 S. W. 1114.

In the instant case, it seems that neither party undertook to show just what authority Green had, and, for that reason, we are unable to say whether he had the right to deny liability or not. Green did not testify. The evidence also shows that notice was sent to the company, but this evidence was insufficient, for the reason that it does not show to what place the letter was addressed, and, in order to show that proof was made by a letter, it would be necessary to show that it was mailed to the company at some place where the company had a place of business. The evidence on these issues does not seem to have been developed, but upon another trial the parties can either present this evidence, or find out that they are unable to do so.

The evidence in this case fails to show either the date of the note or the amount of it. It may have been given when the application for insurance was made, or it may have been given when the second payment was made, if given at all. One witness testifies that Green told him he took a note, and another one testified that he saw the note, but he could not tell the date of the note

or the amount of it. If a note was given and never sent to the company, there is probably no witness, except Green, who could testify about it. That is, there is no other witness who would know when it was given, and the amount of it, and the circumstances under which it was made, except Green.

Appellant also contends that the court erred in giving written instruction No. 1 requested by appellee. That instruction, if the case was fully developed, might be proper, but, with the evidence as it was developed at the trial, it was error to give this instruction. The agent himself was entitled to 75 per cent. of the first premium. And, under this instruction, the jury may have thought that, if the company received the $28.32, this was more than it was entitled to receive, and therefore that a sufficient sum was paid to pay the amount due. The appellant, however, in its evidence, explains that all the money was sent in, and then in the settlement with Green the company would retain the 25 per cent. of the amount received and remit to Green 75 per cent. We think this instruction was confusing to the jury, and, under the state of proof, should not have been given.

Appellant also contends that instruction No. 2, given at the request of the appellee, was erroneous. But that instruction simply told the jury that, if he paid by note, which was accepted by the company, it would be their duty to find for the plaintiff. Of course, it ought not to have said that it was the duty to find for the plaintiff, because the entire premium might have been paid in cash, and still plaintiff would not be entitled to a verdict, if proof of death had not been made or waived, and this instruction ignored this requirement of the policy.

The appellant also complains about the modification of its instruction No. 5. The court added to that instruction, the following: "Unless you further find that the defendant denied liability before the filing of this suit." Of course, whether that would be proper or not would depend upon whether the agent, Green, had

authority to deny liability. If he had, the modification would be proper; otherwise, it would not.

It would serve no useful purpose to set out the testimony in full. The judgment must be reversed for the errors mentioned, and on a new trial whether this modification, and the other instructions given by the court are proper will depend upon the evidence at the trial.

For the errors indicated, the judgment is reversed, and the cause remanded for new trial.