OSHKOSH PACKING & PROVISION CO. *v.* MERCANTILE INS. CO. OF MOBILE, ALA.

(*Circuit Court, E. D. Wisconsin.*   April 11, 1887.)

1. INSURANCE POLICY—PROOF OF LOSS—FRAUD.
    The policy of a fire insurance company contained the following clause: "All fraud or attempt to defraud, by false swearing or otherwise, shall cause a forfeiture of all claim on this company under this policy."   *Held*, charging jury. in suit on policy, that it is incumbent on the defendant, under this clause, to show that the insured, knowingly and intentionally, swore falsely to the proofs of loss in some material respect pertaining to the extent of the loss, in order to maintain the defense of fraud.

2. SAME—EVIDENCE.
    In such case, however, a serious discrepancy between the true value of the property and that sworn to in the proofs of loss, or between the quantity

of any kind of personal property actually destroyed and that stated in the proofs, would be evidence bearing upon the issue of fraud, and a fact to be considered by the jury in determining whether there was fraud or false swearing, within the meaning of the policy, in the proofs.

3. INSURANCE—"WHOLLY DESTROYED"—"TOTAL LOSS."

Rev. St. Wis. 1878, § 1943, provides that "wherever any policy of insurance shall be written to insure any real property, and the property insured shall be wholly destroyed without criminal fault on the part of the insured or his assigns, the amount of the insurance written in such policy shall be taken conclusively to be the true value of the property when insured, and the true amount of loss and measure of damages when destroyed." *Held,* that the expression "wholly destroyed," in this statute, is equivalent to "total loss," and that "total loss," as applicable to a building, does not mean that the materials of which it is composed are all utterly destroyed or obliterated, but that the building, though some part of it may remain standing, has lost its identity and specific character as a building, and has become a broken mass, so that it cannot any longer be properly designated as a building.

4. SAME—REAL PROPERTY—FRAUDULENT REPRESENTATIONS—FORFEITURE.

Under this statute a fraudulent overestimate in the proofs of loss as to the value of real property would not work a forfeiture, although the policy of insurance expressly provided that such representation should have that effect.

5. SAME—PERSONAL PROPERTY.

In such case, however, fraudulent representations as to the value and quantity of the personal property covered by the same policy of insurance will work a forfeiture as to the whole policy, and defeat the right of the insured to recover anything whatsoever upon the real property included in such policy.

6. SAME—EVIDENCE.

In such case, moreover, fraudulent representations as to the value of the real property may be taken into consideration by the jury in determining whether the statements made as to the quantity and value of personal property destroyed were or were not fraudulent, where such statements were not in fact correct.

*Finch & Barber* and *Chas. W. Felker,* for plaintiff.
*Gabe Bouck* and *John W. Hume,* for defendant.

DYER, J., *(charging jury.)* On the fifteenth day of May, 1885, the Mercantile Insurance Company of Mobile, Alabama, the defendant in this suit, in consideration of the payment to it of a certain premium, issued to the plaintiff, the Oshkosh Packing & Provision Company, a policy of insurance by which it insured the plaintiff to the amount of $1,500 against loss of certain property therein specified by fire for the period of one year, extending from May 15, 1885, to May 15, 1886. The specifications of property insured, with the several amounts of insurance on the different classes of property as contained in the policy, are as follows:

"$677.40 on the 2 and 3 story frame packing-house, including dry and chill room, and on one-story frame boiler and engine house adjoining, including steam heating and hoisting apparatus, (excepting engine and boiler,) situate on the west bank of Lake Winnebago, east of Chicago and N. W. R. R. tracks, Oshkosh, Wisconsin.

"$77.43 on engine and boilers, pumps, and other connections contained in said engine and boiler house.

"$212.91 on fixed and movable machinery, shafting, bolting, tanks, coolers, piping, tubing, furniture, fixtures, tools, and all other implements used, all contained in said packing-house, and boiler and engine house.

"$483.87 on hogs, and hog and beef product, lard, and grease rendered and

in process of rendering, salt, ice, cooperage, boxes, coal, syrups, and all material used in packing and curing meats, their own, or held by them in trust or on commission, or sold but not delivered, contained in above-described packing-house.

"$29.04 on one-story frame beef-house south of above-described premises.

"$19.35 on beef product contained therein."

—Making a total insurance on these different classes of property of $1,500. The policy also contains certain clauses or conditions which have a bearing upon the defense here interposed, and which I read to you:

"*First.* All fraud or attempt to defraud, by false swearing or otherwise, shall cause a forfeiture of all claim on this company under this policy.

"*Second.* Persons sustaining loss or damage by fire shall forthwith give notice of said loss to the company, and, as soon after date as possible, render a particular account of such loss, signed and sworn to by them, stating whether any and what other insurance has been made on the same property, giving copies of the written portion of all policies thereon; also the actual cash value of the property and their interest therein; for what purpose and by whom the building insured or containing the property insured, and the several parts thereof, were used at the time of the loss; when and how the fire originated; and shall also produce a certificate under the hand and seal of a magistrate or notary public (nearest to the place of the fire, not concerned in the loss as a creditor or otherwise, not related to the assured) stating that he has examined the circumstances attending the loss, knows the character and circumstances of the assured, and verily believes that the assured has, without fraud, sustained loss on the property insured to the amount which such magistrate or notary public shall certify.

"*Third.* The cash value of the property destroyed or damaged by fire shall in no case exceed what would be the cost to the assured at the time of the fire of replacing the same; and, in case of the depreciation of such property by reason of age, wear and tear, location, change in style, lack of adaptation to profitable use, or other causes, from use or otherwise, a suitable deduction from the cash cost of replacing the same shall be made, to ascertain the actual cash value."

The plaintiff, claiming that there was a total loss of the insured property by fire on the thirteenth day of September, 1885, seeks to recover the amount of the insurance for which it alleges the defendant is liable under this policy.

The defendant alleges, by way of defense, that the plaintiff, in the proofs of loss furnished to the defendant under one of the provisions of the policy which I have just read, falsely and fraudulently stated and swore that it had sustained a loss by the fire to the amount of $18,210.70, when in truth it did not sustain a loss to exceed $10,000. Further, that the plaintiff falsely and fraudulently stated and swore in its proofs of loss that it had sustained by the fire loss of its stock in business to the amount of $5,965.90, when in fact its loss of stock did not exceed $1,000. This is what the defendant alleges by way of defense. In other words, the defense is that the plaintiff knowingly and fraudulently exaggerated and misrepresented its loss, for the purpose of obtaining from the insurance company more money on account of the loss than it was justly entitled to.

Under the conditions of this policy, it became the duty of the plaintiff company, after the fire, to render to the insurance company a particular account of the loss, duly signed and sworn to; in short, to make what has been spoken of as "proofs of loss," which should fully and truthfully exhibit to the company the character, extent, and circumstances of the loss, this being very properly required as a basis of either payment of the insurance, or any other future action of the parties. In due time after the fire, proofs of loss were made in this case, which are in evidence. They appear to have been made and sworn to by Charles G. Baumann, president of the Oshkosh Packing & Provision Company, and state the losses as follows:

"On two and three story frame packing-house, including dry and chill room, and on one-story frame boiler and engine house adjoining, including steam heating and hoisting apparatus, (except engine and boiler,) $7,594.92; on one-story frame beef-house. $649.35; on boiler, engine, pump, and other connections, $938.34; on stock in packing-house, consisting of hams, shoulders, mess pork, mess beef, sausage, lard, tallow, etc., $5,965.90; on machinery and apparatus not part of the building, $3,062.19."

—Making the total loss, as claimed and sworn to in the proofs, $18,-210.70.

As we have seen, the policy in suit provided that all fraud, or attempt at fraud, by false swearing or otherwise, should cause a forfeiture of all claim on the company under the policy. To maintain this defense of fraud in making the proofs of loss, it is incumbent upon the defendant to show that the insured—that is, some one of the officers of the plaintiff company—knowingly and intentionally swore falsely in the proofs of loss in some material respect pertaining to the extent of the loss. The clause in the policy, in regard to fraud and false swearing. is to be viewed in connection with the general nature of the contract; and, so viewing it, it is plain that it was intended thereby to require the insured to give the insurer real and reliable information as to the amount of the loss; and that an honest mistake, or unintentional error, or unintentional misstatement in the proofs of loss, would not avoid liability on the part of the insurance company. If any untruthful statements were made in the proofs of loss in respect to the value or quantity of the property destroyed. it must appear, in order to defeat a recovery on that ground, that such false statements were intentionally and willfully made for the purpose of deceiving and defrauding the insurance company. The mere fact, in a case of this kind, that a party who seeks to recover insurance has even largely overstated the value of the property destroyed, will not, of itself and alone, relieve the company from liability. In order to prevail on this ground, the insurer must show that the insured knew it was worth much less than he swore it to be. There may be an honest difference of opinion as to the real value of property. Such a difference of opinion does often exist in the minds of men as to the value of property, because that question may rest largely in opinion. And if the jury find that even though a valuation is largely excessive, yet if it was made by the insured in good faith, his statement in that respect cannot be held to

amount to false swearing or fraud, within the meaning of the policy. But the insurance company did not agree to pay, if the plaintiff should intentionally endeavor to make out its loss larger than it really was, although the jury may believe that it did suffer a serious loss. In other words, if the plaintiff comes into court attempting to perpetrate a fraud upon the insurance company, by claiming to recover insurance on losses which it knows it did not sustain, it ought not to succeed in such attempt. While the law allows indulgence for mistakes honestly committed, it does not relieve a party if there be a purpose on his part to commit a fraud. And although, as I have said, the mere fact that you should find the actual loss to be less—even much less—than that stated by the insured in its preliminary proofs of loss, would not of itself be sufficient to sustain the defense, yet if there is a serious discrepancy between the true value and that sworn to in the proofs, or between the quantity of any kind of personal property actually destroyed and that stated in the proofs of loss, such discrepancy would be evidence bearing upon the issue of fraud, and a fact to be considered by you in determining whether there was fraud or false swearing, within the meaning of the policy, in the proofs.

These are the principles of law governing this branch of the case, and to be borne in mind by you as you consider and weigh the evidence in passing upon this defense of fraud in making the proofs of loss. The question, as you see, is, did Baumann, the president of this company, when he made these proofs of loss, intentionally, designedly, make false statements as to either the value or quantity of the property destroyed, intending thereby to defraud the insurance company?

In this state we have a statute which provides that "whenever any policy of insurance shall be written to insure any real property, and the property insured shall be wholly destroyed without criminal fault on the part of the insured or his assigns, the amount of the insurance written in such policy shall be taken conclusively to be the true value of the property when insured, and the true amount of loss and measure of damages when destroyed." The expression "wholly destroyed" in this statute is equivalent to total loss; and total loss, as applicable to a building, (for this statute relates only to real property,) means, not that the materials of which it is composed were all utterly destroyed or obliterated, but that the building, though some part of it may remain standing, has lost its identity and specific character as a building, and instead thereof has become a broken mass, or so far in that condition that it cannot be properly any longer designated as a building. When that has occurred, then there is a total destruction or loss. May, Ins. § 421a. Or, as it is said in one of the authorities which treats of this question, a total loss does not mean an absolute extinction. The question is not whether all the parts and material composing the building are absolutely or physically destroyed, but whether, after the fire, the thing insured still exists as a building. 1 Wood, Ins. § 107.

Now, applying to the case the definition of "total loss" thus given, the court must instruct you, upon the undisputed evidence, that the build-

ings covered by this policy were wholly destroyed, within the meaning of the statute referred to. There is, moreover, no evidence that the fire was caused by the criminal fault of the insured. In this connection you will again observe that the policy secured to the plaintiff insurance to the amount of $677.40 on the packing-house and boiler and engine house, and $29.04 on the one-story frame beef-house; and as these buildings were wholly destroyed, without criminal fault on the part of the insured, if you find that there were no fraudulent representations in the proofs of loss touching the quantity or value of the personal property destroyed, it will be your duty to accept the amount of insurance on the buildings as stated in the policy as representing the true amount of the plaintiff's loss on the buildings.

The question upon which the determination of this case depends, is whether there was intentional false swearing or fraud in the proofs of loss as to either the quantity or value of any of the personal property covered by the policy. That is the pivotal point in the case, and that is the question you will take up in the very beginning of your deliberations. If you find that, in stating either the quantity or value of any of the personal property in question in the proofs of the loss, the plaintiff was guilty of designedly false representation,—that is, willful, intentional fraud,—then I am of the opinion that the plaintiff can recover nothing upon the policy, either on account of the buildings or personal property, and your verdict in that case will be for the defendant. At the same time you will understand that, even if you should think there was a fraudulent overestimate of the value of the buildings, such fraud would not defeat a recovery upon the policy. For instance, suppose you should be of the opinion that there was fraud in the valuation of the buildings in the proofs of loss, but no fraud in the statements of quantity or valuations of personal property. The plaintiff would still be entitled to recover as to both buildings and personal property, for the reason that such fraud would not be material because of the statute I have read in relation to real property which is insured and wholly destroyed. To defeat a recovery, the alleged fraud must arise out of and inhere in representations as to the personal property, contained in the proofs of loss. And so you see that it is not fraud in the valuation of the buildings that will defeat the plaintiff's right to recover, but only fraud, if any, in the representations in the proofs of loss relating to the personal property.

Upon this question I think I must have made myself clearly understood; and so your inquiry will be whether Charles G. Baumann, the president of the packing and provision company, did or did not, in the proofs of loss which he signed and swore to, willfully and fraudulently misstate or misrepresent either the value or quantity of any of the personal property destroyed. The question for you to determine in deciding this issue is not alone whether the values and quantities fixed by the plaintiff in the proofs of loss were the true values and quantities of the property destroyed, but whether it was an intentionally false estimate and claim. Of this question, which is purely one of fact, you are the sole and exclusive judges, and I cannot undertake, as, indeed, it is un-

necessary for me to do, to review the evidence. That has been very effectively done by counsel in their arguments, and I have no doubt you understand precisely what the claims of the parties are as to each class of personal property specified in the policy. Here, as one class, you have the engine and boiler, pumps, and other connections, contained in the engine and boiler house. Then, as another class, you have the fixed and movable machinery, shafting, belting, tanks, coolers, piping, tubing, furniture, fixtures, tools, and implements. As another class, the beef and hog product in store, including lard, grease, tallow, etc., in the packing-house; and, finally, the beef product in the beef-house. Now, did Baumann, the representative of the plaintiff company, fraudulently misrepresent, in the proofs of loss, either the quantity or value of any of this property alleged to have been destroyed by the fire of September, 1885? As I have said, the question is not merely whether he over-estimated quantities, or overstated values, but did he designedly, with the purpose of defrauding the insurance company, make statements in said proofs of loss as to the quantity or value, which he knew to be false? And, in determining this issue, you will consider all the evidence bearing upon it, and all the facts and circumstances which preceded and attended the loss, as they have been developed in the testimony.

The burden of proof in establishing the defense interposed, is upon the defendant. Fraud is not to be presumed. It must be affirmatively shown. The solution of the questions involved, depends upon the conviction produced in your minds by the evidence.

I have said that a fraudulent overestimate of the value of the buildings in the proofs of loss will not of itself vitiate the policy, or defeat a recovery by the plaintiff. It will be at the same time understood that, if fraudulent representations as to the value of the buildings are proved, the proof of such fraud may be taken into consideration by you in determining whether the statements made as to the quantity and value of personal property destroyed, if they were not correct, were or were not fraudulent. Although fraud in stating the value of the buildings will not of itself authorize a verdict for the defendant, evidence of such fraud may be used in ascertaining the intent with which any misstatements of the quantity or value of personal property destroyed were made, if you find any such misstatements were made. And by this form of expression I do not mean to convey any intimation as to whether misstatements were or were not made, as that is a question for you alone to determine.

Now, gentlemen, to sum up concisely this branch of the case, if you find from the evidence that the witness Charles G. Baumann, in the proofs of loss which he signed and swore to, designedly misrepresented either the quantity or value of any of the personal property covered by the policy, and destroyed by the fire, then the plaintiff can recover nothing in this suit, and your verdict should in that case be for the defendant upon the entire claim sued on; but if you should find otherwise, —that is, that Baumann did not fraudulently misrepresent in the proofs

of loss either the quantity or value of any of the personal property destroyed,—then your verdict should be for the plaintiff as to both the buildings and personal property; and, if such should be your conclusion, then there will remain the question, what should be the amount of the recovery?

Upon that question I instruct you, first, that, finding the plaintiff entitled to a verdict, it will be your duty, so far as the buildings are concerned, to allow the plaintiff just what the policy names as the amounts of insurance thereon; namely, $677.40 on the packing-house, boiler and engine house, and the steam heating and hoisting apparatus connected therewith, and $29.04 on the beef-house,—making in all, on account of the buildings, $706.44.   That will dispose of so much of the case, namely, the buildings.

Then, as to the personal property, I have to call your attention to a clause in the policy not yet referred to.   I will read it:

"In case of any other insurance upon the property hereby insured, whether valid or not, or made prior or subsequent to the date of this policy, the assured shall be entitled to recover of this company no greater proportion of the loss sustained than the sum hereby insured bears to the whole amount so insured thereon."

There was other insurance on this property, and the total amount of all insurance upon it (I am speaking now of the personal property) was as follows:   On machinery and fixtures, $2,200.06; on engine, boiler, and pumps, $800.06; on stock in packing-house, $5,000; on product in beef-house, $199.96.   It is agreed by the parties that the proportion which the sum insured by the policy here in suit bears to the whole amount of all the insurance on this property is 9.675 per cent.   If you find for the plaintiff, it will be your duty to ascertain the amount of the actual loss on each of these classes of personal property.   For example, what was the total loss on account of machinery and fixtures? What do you determine that to be?   Having ascertained that, then what will be 9.675 per cent. of the amount of such loss?   Thus you will go through each of these classes of personal property, if you find the plaintiff entitled to recover, and get the percentage on each as I have indicated.   If, as to either class, you should find the loss of such amount that, when you take 9.675 per cent. thereof, the amount remaining would exceed or just equal the sum named in the policy as the insurance on that class of property, then the plaintiff's recovery as to that property would be just the insurance thereon.   For illustration, suppose you take the engine, boiler, and pumps.   If you should find the loss on that property of such amount that, when you take 9.675 per cent. of it, the amount remaining would be more than or just equal to the amount of the insurance on engine, boiler, and pumps, as named in the policy, then the plaintiff would be entitled to recover just the amount named in the policy as the insurance thereon.   But if, as to either class of the personal property, you should find the loss thereon of such amount that, when you take 9.675 per cent. thereof, the amount remaining would be less than the sum named in the policy as the insurance thereon, then

the plaintiff's recovery as to that property would be the proportion or per centage thus ascertained. Then it would not be the amount named in the policy. You thus see it depends upon what your determination shall be as to the exact amount of loss as to each class of the property.

The figuring out of this percentage—I presume you understand this already from what the court has said—is not necessary as to the buildings, because the total insurance on the buildings was $6,999.84. By virtue of the statute that I have referred to, as they were wholly destroyed, that amount is taken to be the amount of the true loss on the buildings, and 9.675 per cent. thereof is just the amount of the insurance on the buildings specified in the policy. That is the reason why the court told you a few moments ago that, if you find for the plaintiff, it will be entitled to recover, as to the buildings, just the amount of the insurance thereon. In arriving at the values of personal property destroyed, regard should be had to one of the clauses in the policy which I have read to you, namely:

"The cash value of the property destroyed or damaged by fire shall in no case exceed what would be the cost to the assured at the time of the fire of replacing the same; and, in case of the depreciation of such property by reason of age, wear and tear, location, change in style, lack of adaptation to profitable use, or other causes from use or otherwise, a suitable deduction from the cash cost of replacing the same shall be made, to ascertain the actual cash value."

The total amount of the plaintiff's claim is $1,483.12, and, in any event, that must be the limit of its recovery, except, if entitled to recover, the plaintiff should have interest on the aggregate sum recovered, at 7 per cent., from December 14, 1885.

If you give the plaintiff a verdict, you will add together the various amounts of loss on the different classes of property, ascertained in the way I have pointed out, computing interest on the aggregate from the time and at the rate named, and let your verdict express one sum as the amount of the recovery.