ST. PAUL FIRE & MARINE INSURANCE COMPANY *v.* GREEN.

Opinion delivered June 23, 1930.

*George A. McConnell,* for appellant.

*James G. Coston* and *J. T. Coston,* for appellees.

MEHAFFY, J.   The appellee, B. H. Green, filed suit against the appellant to recover on a fire insurance policy in the sum of $2,500, with loss payable clause to appellee, Denton, for the loss by fire of a three-story brick building situated in Osceola, Arkansas.   It was alleged that the building was destroyed by fire about May 19, 1929; that the defendant admitted liability to the extent of 80 per cent. of the face of the policy, but denied liability for further amount.   Proof of loss was made,

showing the origin of the fire and the extent of appellee's interest in the property, as well as the cash value of the building. The amount of appellee's loss was stated and also other insurance covering the same property. Appellant answered, denying that the building was destroyed by fire, alleging that it was only partly destroyed, and that the damage immediately after the fire was capable of being repaired for a sum much less than the amount of insurance carried on said building. The answer also alleged that the policy sued on required the appellee to protect said building from depreciation and damage after the fire, and that appellant was not liable for any damages which accrued since the building was damaged by the fire. The total amount of insurance on the building was $16,000. That the appellant was not liable for a greater proportion than 80 per cent., that the contribution clause had not been complied with by the insured in that he failed to carry insurance in an amount equal to 80 per cent. of the value of the building, and that appellant is liable only for its proportion of the insurance determined by the application of said 80 per cent. contribution clause; denied that the damage was $35,000, and prayed that its liability be determined in accordance with the contract of insurance sued on.

The appellee, B. H. Green, testified that he was the owner of the three-story building which was destroyed by fire about May 19, 1929; that shortly after the fire he prepared a proof of loss and furnished it to the company, a copy of which was attached to the complaint. The proof of loss stated that the damage to the building was $35,000; the amount was an estimate made by other parties, appellee had a contractor to examine the building, and he agreed to repair it for $20,000. Appellee carried $16,000 insurance on the building.

J. B. Bunn testified that he was manager of the Osceola Lumber Company, which is engaged in selling building material and in building houses; witness had been in the business ten years and was familiar with the

value of building materials; had examined the damaged building, and, if his company took a contract to restore it, it would tear it down to the ground; the walls are not in a condition to put another story on without tearing them down and using the material over; would not tear them down for them; had never torn down an entire building in Osceola; the wall in front has got a number of cracks in it, but does not remember whether there are cracks in the side wall or not. The estimate witness made was in October, and the fire had occurred in May; had seen the building every day since the fire; does not think, if they had begun to reconstruct the building the next day, they could have used the old building.

Jake Counts, a witness, testified that he does general contracting and handling of retail lumber; had examined the building in question; thought possibly the east wall could be used to a good advantage, but would advise tearing down the other walls; the building would be damaged between the time of the fire in May and the time witness inspected it.

Claude Thompson testified that he was engaged in contracting and building, and has been for 25 years; was through the building in question a day or two after the fire; would not consider it wise to use the remnant of the building; does not think it would be safe; some brick in the building could be used, but they would have to be cleaned, and it would cost from one-half to one cent to clean them; thinks the east wall might have been used.

Wasson Pruitt testified that he was fire chief in Osceola and was at the fire which destroyed the building; it was a hot fire and hard to handle; something like 100,000 gallons of water was pumped into the building while it was hot; the next day the water was dripping, and there were from two to six inches of water on the first floor.

R. A. Cartwright testified that it would cost more to raze the building and clean the bricks than they were worth.

Witness Counts was recalled, and said that he did not think the brick part of the building had deteriorated since the fire; when you turn water on a brick wall, it causes the brick to crack and scale.

Witness Bunn was recalled and testified that when you put water on brick or any other clay product when it is hot, it will crack. The water was played all over the building and they tried to break out every window glass in it. There was a composition roof on the building, and it makes the best kind of fire there is.

James E. Fairies, a witness for appellant, testified that he lived in Memphis, was a general contractor, and had engaged in that business for 30 years. He estimated the amount it would take to repair the building at $12,498.56; his estimate contemplated taking off the top floor brick work, ceiling joists, roof joists and burned joists on the second floor, replacing the flooring, etc.; made a careful inspection of the condition of the building; the walls were all right below the third floor; there was no fire below the top floor of the building; the third floor would have had to be rebuilt entirely with new brick; witness was employed by Overstreet, the fire adjuster, to make the estimate and was paid for his work by the insurance company. Witness estimated the building was damaged not over one-third, and that it had been damaged between the time of the fire and the time when he made his estimate.

C. M. Baxter testified that he lived in Blytheville, and was employed by the East Arkansas Lumber Company, engaged in the retail lumber business; that he had been in business 19 years and had made estimates, executed contracts and repaired buildings; was called on by the insurance adjuster to make the estimate; his estimate for repairing the building was $15,747.50. The estimate included the removal of the third story, replacing with new brick and new roof. Witness found on examination of the walls that there was some repair necessary on the front wall and the west wall, that the

rest of them could be used as they were. The building was damaged about one-third. The work done according to his estimate would have made a better building than it was before the fire; was employed by the insurance company to make the estimate.

J. B. Ballew testified that he was called by the insurance company to make an estimate and inspect the building on October 1; was a general contractor and had been engaged in the business at Jonesboro and all through the country, about 25 years; had made a careful inspection of the building to see whether it was a total loss. Estimate contemplated building third story new; estimated that the building was damaged about 35 per cent. to 40 per cent.; that a great deal of the damage had been done to the building between the time of the fire and the time he made the estimate; had had experience in repairing damaged buildings; the amount of his estimate was $12,507.15.

Eric Rogers testified that he engaged in the general insurance and bonding business, and that his company would make a bond for Ballew and guarantee that he would carry out the estimate he made for restoring and repairing the building.

I. C. Sparks testified that he was general representative of the insurance company; that the policy was written for $2,500 that the total insurance carried on the building was $16,000; that the insurance was written at the rate of $1.77 less $0.25 per $100. The regular rate was $1.77; the reduction was given due to the assured's desire to have the insurance written subject to 80 per cent. contribution clause.

B. H. Green was called in rebuttal and testified that the insurance company did not offer to restore his building at the figures given by witnesses for defendant. The building was 25 or 26 years old.

W. E. Overstreet was recalled by appellant, introducing a copy of the proof of loss which showed that the building was worth $35,000 and could be repaired for

something over $20,000. Witness then read the clause from the policy.

The case was tried before a jury and a verdict rendered for the appellees for the amount sued for, with interest at 6 per cent. per annum from September 10, 1929. The appellee thereupon called S. R. Simpson, a lawyer of standing and experience, who testified that he thought $600 or $700 would be a fair fee in the case. Judgment was entered for the amount of the verdict, 12 per cent. damages and $600 attorney's fees. The case is here on appeal.

Appellant contends that the attorney's fee allowed by the trial court is excessive. The suit was for approximately $2,500, and the court allowed an attorney's fee of $600. While the amount sued for was $2,500, the appellant did not contest appellee's right to recover, but contended that there was not a total loss, and that appellant was only liable under the 80 per cent. contribution clause of the contract. The contention of the appellee is that, if the judgment is supported by any substantial evidence, it will not be disturbed by this court. The appellee introduced S. R. Simpson, a lawyer of standing and who had been engaged in the practice for 42 years, and he testified that he thought $600 or $700 would be a fair fee. The general rule is that, if there is any substantial evidence to sustain the verdict of a jury, it will not be disturbed by this court. The reason for this rule is that the jurors are the judges of the credibility of the witnesses and the weight to be given their testimony. When the findings of fact are by the judge sitting as a jury, the same rule applies. This rule, however, has never been followed in cases where the value of an attorney's services was involved.

In a recent case we said: "In *Sain* v. *Bogle*, 122 Ark. 14, it was held, in determining what is reasonable fee for an attorney, 'it is competent to consider the amount and character of the services rendered, the labor, time and trouble involved, the nature and importance of

the litigation or business in which the services are rendered, the amount or value of the property involved in the employment, the skill or experience called for in the performance of the services, and the professional character and standing of the attorneys'.'' *Shackleford* v. *Ark. Baptist College, ante* p. 363; *Valley Oil Co.* v. *Ready*, 131 Ark. 531; *Bayou Meto Drain. Dist.* v. *Chapline*, 143 Ark. 446. Opinion evidence of expert witnesses as to the value of an attorney's services is not conclusive. 2 R. C. L. 1061; 6 C. J. 762; *Collum* v. *Mock*, 21 La. Ann. 687; *Randolph* v. *Carroll*, 27 La. Ann. 467; *Baldwin* v. *Carleton*, 15 La. Ann. 252.

We are of opinion, after a review of all the evidence, including the nature of the litigation, the amount in controversy, the labor, time and trouble involved, that $300 is a fair compensation.

It is next contended by the appellant that there was not a total loss. The building was a three-story brick building, and the third story was entirely destroyed. The walls of the first and second stories were standing after the fire. There was a conflict in the evidence as to whether the building could be repaired. J. B. Bunn testified that the walls were not in position to put another story on without tearing them down and using the material over, and that he would not tear them down for them. He said the wall in front had a number of cracks in it. This witness said he had seen the building every day since the fire, and he did not think, if they had begun to reconstruct the building the next day, that they could have used that old building. Other witnesses of appellee testified to substantially the same facts. There being a conflict in the evidence as to whether the part of the building left standing could have been utilized, it was a question for the jury. If the material that was not destroyed could not be utilized, the building was a total loss within the meaning of the policy. ''The cases all agree that the insurance of a building is upon the building, and not on the materials which compose it, and that

the total destruction of a building within the meaning of an insurance policy means its complete destruction as a building, but not necessarily the absolute extinction of all its materials, or even that no part of it can be left standing. But just the extent to which a building must be destroyed in order to be a total loss is a question on which the courts are divided. Some courts hold that if the building loses its identity and specific character by fire, although a large part of the materials or component parts are left standing, it is a 'total destruction' within the meaning of the policy. Other courts take the position that there cannot be a total loss so long as the remnant of the structure standing is reasonably adapted for use as a basis upon which to restore the building to the condition in which it was before the fire; and that whether it is so adapted depends upon the question whether a reasonably prudent owner, uninsured, desiring such a structure as the one in question was before the fire, would in proceeding to restore it to its original condition utilize such remnant as such basis. Under the latter view the remnant must have formed a substantial part of the building.'' 14 R. C. L., p. 1302.

If a building is destroyed, as a building, so that the walls, although remaining, are in such a condition that they will have to be torn down, there is a total loss. *Williams* v. *Hartford Ins. Co.*, 54 Cal. 442; *Oshkosh Packing & Provision Co.* v. *Mercantile Ins. Co.*, 31 Fed. 200; *Penn. Fire Ins. Co.* v. *Drackett*, 57 N. E. 962; *Teter* v. *Franklin Fire Ins. Co.*, 82 S. E. 40; .*German Ins. Co.* v. *Eddy*, 54 N. W. 856; *Seyk* v. *Millers' Nat. Ins. Co.*, 41 N. W. 443; *Roquette* v. *Farmers' Ins. Co.*, 191 N. W. 772; *Lowry* v. *Fidelity-Phœnix Fire Ins. Co.*, 272 S. W. 79; *Fire Association* v. *Strayhorn*, 211 S. W. 447; *Ins. Co.* v. *Heckman*, 67 Pac. 879.

The court gave the jury the following instruction:

4. As to what a total loss is, it becomes necessary for the court to give you some information, and on that point you are instructed: If you find from a preponder-

ance of the evidence in the case that the building was burned, and that it was so far destroyed that no substantial part or portion of it remains in place capable of being utilized to advantage in restoring the building in the condition in which it was before the fire, then it is a total loss. On the other hand, there can be no total loss if the remnant of the structure standing is reasonably adapted for use as a basis upon which to restore the building to the condition in which it was before the fire, and whether or not the remnant of the building is adapted to use as a basis to restore the burned building to its condition before the fire depends on the question whether a reasonably prudent owner, uninsured, desiring such a structure as the building was before the injury, in proceeding to restore the building to its original condition, would utilize the remnant."

This was a correct instruction as to what constitutes a total loss. The jury having found that there was a total loss, it becomes unnecessary to discuss co-insurance and percentage clauses. Section 6147 of C. & M. Digest reads as follows: "A fire insurance policy, in case of total loss by fire of the property insured, shall be held and considered a liquidated demand against the company taking such risk, for the full amount upon which the company charges, collects or receives a premium; provided the provisions of this article shall not apply to personal property." *Farmers' Home Mutual Fire Assn.* v. *McAlister,* 171 Ark. 574.

Appellant insists that the court erred in permitting witness Counts to testify with reference to the condition of the building at the time of the trial, and to testify that the building would have to be torn down. This witness testified that he saw it a few days after the fire, and that he did not think the building had deteriorated any since the fire. He also testified that the walls would have to be torn down. This testimony was competent. Appellant introduced evidence as to the condition of the building, and that the walls would not have to be torn down.

The question was whether there was a total loss, and each party had a right to introduce testimony tending to show whether the walls could or could not be utilized. If they could be utilized, there was not a total loss; if they could not be utilized and would have to be torn down, there was a total loss. The court did not err in permitting witness Cartwright to testify as to the cost of removing and cleaning the brick. Most courts hold that where there is a total loss of the building but not of the materials, it is proper to show the value of the materials because, if the insurance company pays for a total loss, it is entitled to the value of the materials that are not destroyed. It was therefore proper to show that the cost of removing and cleaning the brick would be as much as they would be worth. Appellant insists that witness Ballew should have been permitted to testify that the building was not a total loss. We do not agree with appellant in this contention. The question to be determined was whether it was a total loss. This was a question of fact for the jury, and it depended in this case on whether the walls could be utilized. This witness was permitted to testify and did testify to the facts, and it was not proper for him to give his opinion as to whether it was a total loss. The court properly instructed the jury, and there was substantial evidence to sustain the verdict.

The attorney's fee will be reduced to $300, and the judgment affirmed.