### CONLEY v. FIDELITY–PHENIX FIRE INS. CO. OF NEW YORK.
#### Civ. No. 996.

United States District Court
W. D. Arkansas, Fort Smith Division.

Feb. 1, 1952.

Eugene Coffelt, Bentonville, Ark., for plaintiff.

James I. Teague, Little Rock, Ark., for defendant.

JOHN E. MILLER, District Judge.

Plaintiff filed his complaint in the Circuit Court of Benton County, Arkansas, alleging that he took out a fire insurance policy with the defendant in the amount of $2,000 covering a dwelling on certain real estate located in Rogers, Arkansas, and in the amount of $500 covering the household and personal property in said dwelling; that all premiums due on the said policy up to and including September 23, 1951, were paid; that on the night of September 23, 1951, the dwelling and personal property therein were destroyed by fire, the loss to the dwelling being total, and the loss to the personal property exceeding $500; that due notice and claim has been made to defendant but defendant has failed and refused to pay said claim; and praying that plaintiff have judgment in the sum of $2,500, plus 12% penalty, 6% interest and attorney's fee.

The defendant duly removed the case to this court and thereafter filed answer. In its answer defendant admits the fire but (1) denies that the dwelling was a total

loss; (2) denies that due notice and claim was made, alleging that the provisions of the policy requiring that proof of loss be furnished defendant within 60 days were not complied with; (3) alleges that title to the property is in both plaintiff and his ex-wife, and since this is an interest-type policy, the interest of L. C. Conley, plaintiff, cannot exceed more than 50% of the value of the dwelling and household goods; and (4) alleges that plaintiff either burned or caused said property to be burned.

The case was tried to the court without a jury on January 30, 1952, by agreement of the parties, and at the conclusion of the presentation of the evidence the court took the case under advisement. The court has now fully considered the pleadings, the ore tenus testimony of the witnesses and exhibits thereto, the authorities cited by the respective parties and those found by the court as the result of an independent research, and makes and files herein the following findings of fact and conclusions of law, separately stated.

### Findings of Fact.

#### No. 1

The plaintiff, L. C. Conley, is a citizen and resident of Benton County, Arkansas, within the Western District of Arkansas. The defendant is a stock fire insurance company organized under the laws of the State of New York and authorized to do business in the State of Arkansas. The amount involved herein exceeds the sum of $3,000, exclusive of interest and costs.

#### No. 2

On April 21, 1951, the defendant through the Vogt Agency at Rogers, Arkansas, issued and delivered its policy of fire insurance No. S 174 to the plaintiff for a term of five years in consideration of the payment of a premium of $89.42 payable in installments. An installment of $21.70 was paid upon the issuance and delivery of the policy and there were no payments due on the premium on the date of the fire.

The policy recites that the defendant "does insure L. C. Conley and his legal rep-resentatives to the extent of the actual cash value of the property at the time of the loss, but not exceeding the amount which it would cost to repair and replace the property with material of like kind and quality within a reasonable time after such loss, * * * nor in any event for more than the interest of the insured, against all direct loss by fire * * *." The amount of the insurance was $2,000 "on the approved roof frame dwelling occupied by owner", and $500 on household and personal property usual or incidental to the occupancy of the premises as a dwelling.

#### No. 3

While the policy was in force on September 23, 1951, a fire occurred in the building which so burned the household goods as to render them worthless, although some of the household goods were not totally consumed.

The plaintiff testified that the value of the household goods and personal property in the house at the time of the fire was between $1,700 and $1,800. However, the list that he filed with the Vogt Agency totaled $1,443.75.

#### No. 4

The building was a frame structure and was situated on a plot of land 124 feet wide East and West and 200 feet long North and South, being a part of Block 11 in McGaughey's Orchard Addition to the City of Rogers, Arkansas.

The title to the property was obtained by deed dated April 8, 1938, and executed by the Benton County Nursery Company, Inc., which deed conveyed the property to the plaintiff "Lon C. Conley and wife Goldie and unto his and her heirs and assigns forever".

The house, at the time the plaintiff and his wife obtained title, consisted of a two story building with rooms both upstairs and downstairs 35 feet long North and South and 14 feet wide East and West and was divided into some 5 or 6 rooms. Later the plaintiff built an addition to the original building along and upon the West side 27 feet long North and South and 14 feet wide East and West. The addition to the

original house consisted of three rooms and all the rooms were on the ground floor. On the date of the fire the house consisted of 6 rooms downstairs and a basement and two large rooms upstairs.

The fire was discovered on the evening of September 23, 1951, at about 10 o'clock, and when the fire fighting equipment of the Rogers Fire Department arrived at the building the entire South end of the original building was burning fiercely and the roof of the entire building was flaming with the exception of the roof over the Northwest downstairs room. Photographs were introduced showing the extent to which the building was burned before the fire was extinguished, and these photographs disclosed that the North wall and the East wall were left standing, as well as the West wall of the addition, but all of the inside with the exception of the floors in two or three rooms was badly burned and charred. Both parties introduced testimony on the question as to whether the building was a total loss, and from that testimony and an examination of the various photographs introduced by the respective parties, the building appears to be in such a condition that the part remaining would of necessity have to be torn down before being utilized. The testimony does not disclose that the portions of the building left standing could be reasonably adapted for use as a basis upon which to restore the building to the condition in which it was before the fire, and a reasonably prudent uninsured owner desiring to restore the building to its original condition would not utilize the standing portions of the building before tearing them down. In other words, the portions of the building left standing were so damaged that they could not be utilized to an advantage in restoring the building.

### No. 5

The former wife of the plaintiff obtained an absolute divorce from the plaintiff in the Benton Chancery Court on April 20, 1951. The decree made no division or partition of the property but recites "that the parties hereto are joint owners by the entirety of property in Rogers, Arkansas". The property referred to is the land and the house involved herein. See, also, deed introduced as plaintiff's Exhibit 1.

### No. 6

The lowest estimate of the cost of rebuilding the house and restoring it to its condition prior to the fire was $3,500. The defendant introduced testimony of one witness, C. R. Bradway, who testified that he was a contractor and that the building could be repaired, but that witness refused to state what would be the cost of repairing the building. Mr. J. T. Harmon, a contractor, stated that he would undertake to rebuild the building for the sum of $5,000 to $6,000.

It is clear that the building could not have been restored within a reasonable time after the fire for a sum of money less than $4,000. All the testimony disclosed that the lot without the building was worth from $1,200 to $1,500, and a preponderance of the testimony showed the building and land together before the fire was worth from $5,000 to $6,000.

### No. 7

The plaintiff was not at home the night of the fire. He was visiting a sister in Madison County, Arkansas, and did not return to Rogers, Arkansas, until the next day, Monday, September 24, 1951, when he learned that the fire had occurred and that the officers of the law were looking for him. He went immediately to the police station and was there interrogated about the origin of the fire and was arrested upon a charge of arson committed by burning the building, but that charge was later dismissed upon a preliminary hearing before a Justice of the Peace.

For some months the plaintiff had not been living regularly in the house, but occasionally did spend the night there. He was under the impression that he had to spend at least one night every 60 days in order to keep the insurance in force.

The testimony of the Chief of the Fire Department of Rogers, Arkansas, and another fireman disclosed that someone had placed in most if not all of the rooms

various containers such as buckets, pans and a small tub, which utensils contained a petroleum product. A bucket was setting in the Northwest downstairs bedroom to which a string was attached that led to a small wash tub that was found setting on a shelf in the bathroom, and it was the theory of the defendant that the plaintiff either burned or caused the building to be burned. The testimony further showed that the front door was locked from the inside and the back door was padlocked, while a door on the East side had nothing more than an ordinary lock. The plaintiff admitted that he went by the property on Sunday morning, September 23, but did not enter the house and only went by for the purpose of ascertaining whether he had any mail and did find some mail in the mailbox, which he obtained, and after obtaining the mail he left the premises and went by bus to his sister's home in Madison County. There is no doubt but that the plaintiff was not in Rogers, Arkansas, on the night of the fire, and while the testimony discloses that the fire was of incendiary origin, yet, it is not sufficient to establish that the plaintiff set or caused the fire to be set.

### No. 8

Among other defenses alleged by defendant is a denial on the part of the defendant that the plaintiff gave due notice and made claim upon the defendant.

The policy sued upon provides: "The insured shall give immediate written notice to this company of any loss, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, furnish a complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed; and within sixty days after the loss, unless such time is extended in writing by the company, the insured shall render to this company a proof of loss, signed and sworn to by the insured, stating the knowledge and belief of the insured as to the following: the time and origin of the loss, the interest of the insured and of all others in the property, the actual cash value of each item thereof and the amount of loss thereto, all incumbrances thereon, all other contracts of insurance, whether valid or not, covering any of said property, any changes in the title, use, occupation, location, possession or exposures of said property since the issuing of this policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of the loss and whether or not it then stood on leased ground, and to furnish a copy of the directions and schedules in all policies and, if required, verified plans and specifications of any building fixtures or machinery destroyed or damaged. The insured, as often as may be reasonably required, shall exhibit to any person designated by this company all that remains of any property herein described, and submit to examinations under oath by any person named by this company, and subscribe the same * * *."

As heretofore stated, when the plaintiff returned to Rogers the day following the fire, he learned that the officers of the law desired to see him and he went to the Police Station in Rogers, Arkansas, for that purpose. He was interrogated by the officers of the law but present at that time was at least one man representing the Underwriters Association, and there is some testimony that another man representing in some capacity the defendant was present at such examination, and it is not likely that these men remained silent during the questioning. The examination ended with the arrest of the defendant upon a charge of arson, and a preliminary hearing was held at Bentonville, the County Seat, some two or three days later. The hearing was attended by R. L. Vogt, the issuing agent of the defendant, and by Frank W. Chambers, Jr., Branch Manager of the General Adjustment Bureau, Inc. With Mr. Chambers was another gentleman, the identity of whom was not disclosed by the testimony. As a result of the hearing before the Justice of the Peace, the plaintiff was exonerated and discharged.

Upon his release from the criminal charge, the plaintiff returned to Rogers and

was in conference some twelve or fifteen times between that date and the expiration of the sixty days from the date of the fire with the agent, Mr. Vogt.

The defendant in its answer denied that any written notice was given it of the occurrence of the fire, but the agent of the defendant testified that he gave the defendant company formal notice within a day or two after the fire occurred. The notice was not introduced, but when that testimony was adduced the attorney for the defendant stated that he was not then making any claim that notice was not given but that he was contending that proof of loss was not filed as required by the policy.

A few days after the fire occurred, the agent of the defendant requested the plaintiff to furnish him an itemized list of the household goods, together with their value. That list was furnished to the agent and showed a value of $1,443.75.

The agent did not testify as to why he requested the list or what he did with it, but he did testify that the plaintiff frequently asked him when the amount due would be paid and that he told the plaintiff that, in all probability, since a charge of arson had been made against the plaintiff, the company would not settle under the policy prior to the expiration of the sixty days from the date of the fire.

Also, the agent suggested to the plaintiff that he furnish him (the agent) with some estimates of reliable contractors of the damage to the building, and gave to the plaintiff a list of contractors to contact. The plaintiff contacted the contractors and they would not make an inspection without a fee. The plaintiff then advised Mr. Vogt that in his opinion the loss was total and that the facts were so developed at the hearing on the arson charge, and therefore it was not necessary to submit estimates of the damage to the house.

On November 21, 1951, which was one day prior to the expiration of the sixty days allowed by the policy for filing formal proof of loss, Mr. Chambers, the adjuster, wrote the plaintiff from Fayetteville, Arkansas, as follows:

"As of this date, we have not received your contractors' estimate for the cost to replace or repair the damaged building.

"Kindly let us have this estimate at your earliest convenience."

The plaintiff testified that he did not receive this letter until November 25, as he was out of town when it arrived at the Post Office at Rogers on November 23, but the agent, R. L. Vogt, stated that the plaintiff evidently received the letter on November 23 because on that date the plaintiff stated to him his reasons for not obtaining the estimates and that at that time he dictated in the presence of plaintiff a letter to the adjuster in which he said: "He did not propose to send in an estimate of the cost of replacement of the building where fire took place on September 23 at 410 West Mulberry Street in Rogers. He stated that three different men stated that the building was a total loss and that replacement was not necessary."

At that time, the sixty days within which to make proof of loss had expired.

The agent who issued the policy for the company further testified that he represented the insured when a fire occurred, but that he advised the plaintiff that he did not have authority to settle the claim since it had been referred to an adjuster. The agent did not advise the plaintiff that it was necessary to execute formal proof of loss and no blanks were furnished the plaintiff for that purpose, but the plaintiff by contacting the agent at least twelve or fifteen times was relying upon the agent to see that the claim was properly presented and no doubt Mr. Vogt, the agent, was doing what he thought should be done to put the claim in shape for settlement. The agent at that time was fully cognizant of all provable facts pertaining to the fire and likewise the adjuster was fully informed, and there is no doubt but that the plaintiff relied upon the agent and upon the various conversations that he had with the agent and felt that his claim would be paid upon the expiration of the sixty days. In addition to these facts, the attorney for the plaintiff wrote the defendant company on September 27, 1951, as follows:

"I represent L. C. Conley who is the insured under your fire policy dated the 21st day of April, 1951, and numbered S–174 in the amount of $2,500.00.

"Mr. Conley's home and contents were destroyed on the night of September 23, 1951.

"You are to take notice that this letter is to be considered a claim under said policy for the face value in the amount of $2,500.00."

A copy of that letter was sent to Mr. Edgar H. Thomas, special agent of the defendant at 416 Union National Bank Building, Little Rock, Arkansas, but neither the company nor any representative of it made any response to the letter.

## No. 9

■ Considering the importance of the litigation, the nature thereof and defenses thereto, the result and benefits derived, the character of the services performed by the attorney for plaintiff, his professional ability, standing, learning, skill, proficiency in his profession and his experience, a fee of $500 is reasonable.

## Discussion.

The first defense alleged by defendant is that the dwelling which was insured for $2,000 was not a total loss, but that certain parts of the dwelling are capable of being used for the purpose of rebuilding.

■ Under the facts recited in Finding No. 4 of the Findings of Fact the building was a total loss within the meaning of the policy and the law. St. Paul Fire & Marine Insurance Company v. Green, 181 Ark. 1096, 29 S.W.2d 304; Phoenix Assurance Co., Ltd. v. Loetscher, 215 Ark. 23, 219 S.W.2d 629.

The second defense alleged is that the defendant is not liable because the plaintiff failed to furnish the defendant with proof of loss pursuant to the terms of the policy.

■■ The proof of loss clause is a valid part of the insurance contract and has been many times sustained and enforced. The company's right to rely upon noncompliance with the clause is not waived by a general denial of liability asserted by the company after the period for filing a proof of loss has expired. Cook, Commissioner of Revenues v. U. S. Fidelity & Guaranty Company, 216 Ark. 743, 227 S.W.2d 135.

■■ However, a failure to give notice or furnish proof of loss is waived by any conduct on the part of the insurer or its authorized agent inconsistent with the intention to enforce a strict compliance with the insurance contract in such regard. A waiver of formal proof of loss may be inferred under a variety of circumstances, such as subjecting the insured to an examination under oath as to the facts of the fire, or by retaining without objection a claim made within the 60 day period, or by charging the insured with the crime of arson. Any conduct on the part of the company or its representatives prior to the expiration of the sixty day period which lulls the insured into a feeling of security in that regard is sufficient to establish a waiver. 29 Am.Jur. Sec. 1139, p. 855; American Insurance Company v. Haynie, 91 Ark. 43–48, 120 S.W. 825; Minneapolis Fire & Marine Mutual Insurance Company v. Fultz, 72 Ark. 365, 80 S.W. 576; National Union Fire Insurance Company v. Whitted, 157 Ark. 515, 248 S.W. 560; Eminent Household of Columbian Woodmen v. Gaunt, 128 Ark. 626, 194 S.W. 700; Planters' Mutual Insurance Association v. Hamilton, 77 Ark. 27, 90 S.W. 283; Dodge v. Thomason, 94 Ark. 21, 125 S.W. 648.

■ There is no doubt but that the plaintiff was led to believe that the delay in making payment under the policy was because of the charge of arson that had been filed against him. The testimony of the agent, R. L. Vogt, discloses that he in fact was of the same opinion and so advised the insured. It is true that the insured did not contact the adjuster but Vogt, being the agent who issued the policy, was authorized to waive the filing of the formal proof of loss. The Security Insurance Company v. Van Norman, 195 Ark. 200, 111 S.W.2d 561.

■ Under the circumstances that existed and the facts set forth in Finding No. 8 of the Findings of Fact the defendant

company waived the filing of the formal proof of loss.

Another defense alleged is that the plaintiff either burned or caused said property to be burned. The burden of establishing this defense was upon the defendant and under the facts as recited in Finding of Fact No. 7 the proof was not sufficient to establish that the plaintiff either burned or caused the property to be burned.

The only other defense alleged by the defendant is that the title to the property is in both the plaintiff and his ex-wife, Goldie Conley, and that the policy is an interest-type policy, and because of the provision in the policy limiting the recovery "in any event for more than the interest of the insured" that the interest of the plaintiff cannot exceed more than 50% of the value of the dwelling and household goods insured by the policy.

The facts disclose, Finding No. 5 of Findings of Fact, that the title to the property is held by the plaintiff and his ex-wife as tenants by the entirety.

In Davies v. Johnson, 124 Ark. 390, 393, 187 S.W. 323, 324, the court said: "In Branch v. Polk, 61 Ark. 388, 33 S.W. 424, 30 L.R.A. 324, 54 Am.St.Rep. 266, the rule was laid down that under a deed to husband and wife 'the entire estate is vested in each of the tenants by the entireties, for they hold, not by moieties, but by entireties.' That, in fact, conforms precisely to the common-law definition of an estate by the entirety. If the entire estate is vested at the time of the conveyance in each of the tenants, how could it be divested merely by the granting of a divorce in the absence of a statute authorizing it to be done? Suppose one of the parties executes a deed to a third party during the coverture, purporting to convey the whole estate, the deed would convey all of the vested interest of the grantor, including the rights resulting from survivorship; and it would be an anomalous situation to hold that such a vested interest could be divested by divorce of the parties."

And, at page 394 of 124 Ark., at page 324 of 187 S.W., the court quoted from Roulston v. Hall, 66 Ark. 305, as follows:

" 'Where land is conveyed to husband and wife, they do not take by moieties, but both are seized of the entirety—the whole in contradistinction to a moiety or part only. Robinson v. Eagle, 29 Ark. 202; 2 Kent's Comm. 132; 4 Kent's Comm. 414. * * * Neither tenant by entirety can convey his or her interest so as to affect the right of survivorship in the other. The alienation by the husband of a moiety will not defeat the wife's title to that moiety if she survive him; but, if he survive, the conveyance becomes as effective to pass the whole estate as it would had he been sole seized at the time of the conveyance. The husband may do what he pleases with the rents and profits during coverture, but he cannot dispose of any part of the inheritance, without his wife's consent.' "

The able attorneys representing the respective parties were unable to cite any decision of any court defining the interest of a tenant by the entirety in the proceeds of an insurance policy such as the one before the court, and the court has been unable to find any decision directly in point.

Section 66–515, Ark.Stats.1947, provides: "A fire insurance policy, in case of a total loss by fire of the property insured, shall be held and considered [to be] a liquidated demand against the company taking such risk, for the full amount stated in such policy, or the full amount upon which the company charges, collects or receives a premium; provided, the provisions of this article shall not apply to personal property."

The law of Arkansas governs and determines the rights of the parties since the contract of insurance was entered into and delivered in Arkansas and covers property situated in this state.

It is true that the title of the plaintiff is not sole and unconditional, Western Assurance Company v. White, 171 Ark. 733, 286 S.W. 804, 48 A.L.R. 349, but the policy by its express terms covers the "interest of the insured" in the property. That interest under the law of Arkansas was "of the entirety, the whole in contradistinction to a moiety or part only". Thus, since the loss of the building was total, the claim of the plaintiff was a liquidated demand for the full amount stated in the policy and upon

which the company charged and collected a premium, and the plaintiff is entitled to recover the face amount of the policy or $2,000 for the building.

Included in this alleged defense is the contention that the interest of the plaintiff could not exceed more than 50% of the value of the dwelling and household goods insured by the defendant. Section 34–1215, Ark.Stats.1947, reads as follows: "Courts of Equity, designated Chancery Courts within the State of Arkansas, shall have the power to dissolve estates by the entirety or survivorship, in real or personal property, upon the rendition of a final decree of divorcement, and in the division and partition of said property, so held by said parties, shall treat the parties as tenants in common."

Assuming that this statute is constitutional as applied to this estate, which was created in 1938, and prior to the passage of the statute, which is probably a violent assumption, the divorce granted to the wife of the plaintiff did not dissolve the estate by the entirety, and as long as an estate by the entirety is recognized in Arkansas, it is doubtful whether the legislature has the power to authorize a partition of it if the estate was created prior to the enactment of the statute. But assuming further that the statute authorizing a partition of the estate is valid and that the plaintiff in the event of a partition (there was no partition here) would be held to be the owner of only 50% of the estate and that the valued policy statute, Sec. 66–515, supra, does not apply, yet, the uncontradicted proof is that the house was worth more than $4,000, and the plaintiff would be entitled to recover for his interest in the property, not to exceed the face amount of the policy, and his interest if calculated at 50% would amount to at least $2,000 for the building.

■■■ At the trial the defendant made no offer to repair or rebuild the property although the plaintiff was asked to submit estimates of the amount that would be required to repair or rebuild the house. Those estimates were in excess of $4,000, and assuming that plaintiff's interest was only 50%, he would still be entitled to recover the face amount of the policy of $2,000.

No contention is made by the defendant as to the value of the personal property that was destroyed. The testimony shows it was worth a sum considerably in excess of $500, and there does not appear to be any reason why the plaintiff should not recover the full amount stated in the policy of $500 for the loss to the household goods and personal property.

### Conclusions of Law.

#### No. 1

The court has jurisdiction of the parties and of the subject matter of this cause.

#### No. 2

■■■ The contract of insurance involved here was made in Arkansas and covered Arkansas property, and, therefore, the law of Arkansas governs the nature, obligation and effect of the contract.

#### No. 3

The building involved herein was a total loss within the meaning of Ark.Stats.1947, § 66–515. Plaintiff's interest in the property was that of a tenant by the entirety, and under the law of Arkansas that interest was such that, for purposes of the policy limitation confining a recovery to the interest of the insured, plaintiff is entitled to recover from the defendant the face amount of the policy, or $2,000, for the loss of the building.

#### No. 4

In the alternative, if the building was not a total loss (the court has found otherwise), the plaintiff is entitled to recover for the actual damage to the building up to the face amount of the policy, or $2,000, and not exceeding his interest in the property. If plaintiff's interest is not the whole, as distinguished from a part, for purposes of this policy limitation, it would equal at the very least 50% of the value of the property, and since the court has found that the building itself had a value of $4,000, or more, plaintiff had an interest therein of

at least $2,000, which he was entitled to protect by insurance.

Therefore, since the actual damage to the building exceeded $2,000, the face amount of the policy, plaintiff is entitled to recover from the defendant on this ground alone the sum of $2,000 because of the loss of the building.

### No. 5

The policy of insurance issued by defendant to plaintiff was in full force and effect at the time of the fire, and thereafter, plaintiff complied with all conditions precedent to a recovery thereon except the filing of a formal proof of loss. However, under the facts as found by the court, the defendant waived the filing of a formal proof of loss, and, therefore, cannot now insist upon such failure as a ground for denying liability under the policy.

### No. 6

The household goods and personal property in the building at the time of and destroyed by the fire exceeded in value the sum of $500, face amount of the policy covering such items, and, therefore, plaintiff is entitled to recover from the defendant on the policy the sum of $500 by reason of such destruction.

### No. 7

The evidence is insufficient to establish that the plaintiff burned the building and personal property therein or that he caused the same to be burned.

### No. 8

Therefore, plaintiff is entitled to recover of and from the defendant the sum of $2,000 for loss of the building, the sum of $500 for loss of the personal property therein, with interest at 6% per annum from November 22, 1951, together with the sum of $300 as the 12% penalty authorized by the law of Arkansas, and the sum of $500 as attorney's fee authorized by the law of Arkansas, and his costs expended herein.

Judgment in accordance with the above will be entered.