Fort v. State.

*Smoote, McRae & Arnold*, for appellees.

The law requires the court to direct the hiring, and if it fails to do so the Sheriff is without authority. *Mansf. Dig., secs. 1213, 1214; 37 Ark., 437.* See, also, *secs. 1222, 1226, Mansf. Dig.*

2. The hiring was for less than 75 cents per day, and the bond was void. *Sec. 1213, Mansf. Dig.; 37 Ark., 448; ib., 437; 19 id., 346; 25 id., 209; ib., 376; 29 id., 386; 2 Pars. Cont. (6 ed.), p. 673.*

3. The contract being illegal, the doctrine of estoppel does not apply. Authorities *supra. 19 Ark., 346; 25 id., 210.* Besides the complaint does not allege that the convict performed the labor, nor deny escape. *Sec. 1214 Mansf. Dig.*

---

## FORT v. STATE.

1. INSTRUCTIONS: *Assumption of guilt.*

   A clause in an instruction by which the jury are told that a witness for the State is an accomplice, will not be construed to assume that the defendant is guilty, where it appears from the whole charge that no assumption is warranted to the effect that the court intended to interfere with the jury's right to believe the testimony of the witness, but only to inform them that if they believed it, other evidence connecting the defendant with the commission of the offense charged, would still be required to authorize his conviction.

2.  SAME:  *Refusal of unnecessary charge.*

Where a charge to the jury fairly covers every matter pertaining to a defendant's guilt or innocence, it is not error to refuse prayers for other instructions.

3.  EVIDENCE:  *Acts of co-conspirators.*

On the separate trial of one of two defendants jointly indicted for a burglary alleged to have been committed by breaking into a building with intent to steal the funds of a county, evidence that his co-defendant in his absence had proposed to the Deputy Treasurer to obtain through the latter moneys from the county treasury, is admissible where there is proof that the defendants together renewed the offer at another time, and where there is also proof tending to show that their conduct on both occasions was part of a conspiracy to induce the deputy to aid them in committing the offense.

4.  PRACTICE IN SUPREME COURT:  *Evidence favorable to appellant.*

Where evidence is favorable to the party against whom it is introduced, or is not objected to by him in the court below, its admission cannot be assigned as error.

5.  EVIDENCE:  *Appearances: Stating conclusion of fact.*

On a trial for burglary, a witness who had examined the door of a vault, and an ordinary lock which fastened it, was permitted to state that force had been applied from the outside to break the lock.  HELD:  That as the statement was only a conclusion of fact, drawn from appearances which could not be produced to the jury, it was not reversible error to admit it.

6.  SAME:  *Opinion of witness.*

But where on such trial a witness who had also examined the broken lock and door, and testified fully to the conditions he observed, was asked the question, "Do you think the inner vault door was opened first and the lock broken afterwards," it was not error to refuse to allow him to answer, as the question called for a speculative opinion not necessarily based on what he had observed.

7.  SAME:  *Corroborating testimony of accomplice.*

The defendants were charged with a burglary committed with intent to rob the county treasury.  A witness for the State who had been the Deputy Treasurer, testified that after agreeing to aid the defendants in obtaining access to the public money his "nerve" failed him, a few days before the burglary, and at the request of the defendants, he then gave them the combination to the safe in which the money was kept, and they declared their intention to commit the crime without further assistance.  By other testimony it was shown that the offense was committed by some one who had the combination to the safe. One of the defendants admitted that he had entertained a proposition from the deputy to take the combination and commit the burglary.  Several witnesses testified to the other defendant's confession, that he had joined a conspiracy and obtained the combination for the same purpose.  It was also proved that both defendants, who resided three miles from the county seat, where the

Treasurer's funds were kept, came to town without ostensible business, on the night the burglary was committed; that they left before daylight, and afterwards denied having been in town during that night. HELD: That the evidence of the accomplice was sufficiently corroborated to sustain a conviction.

APPEAL from *Sebastian* Circuit Court.

JOHN S. LITTLE, Judge.

The appellants, J. D. Fort and H. W. Fort, were indicted by the grand jury of Logan County for the crime of burglary charged to have been committed on the night of February 17, 1887, by breaking and entering the court house of that county, with intent to steal certain public moneys and school funds then being in that building. They obtained a change of venue to the Circuit Court of Sebastian County for the Greenwood District, in which they were tried and convicted. The evidence shows that on the night mentioned in the indictment the safes of the County Treasurer and Sheriff, kept in the court house, were opened, and a large sum of money was taken from the former. The Treasurer's safe was in the vault of the Circuit Clerk's office which had two iron doors, the inner of which was fastened by a lock and key, and the outer by a combination lock. At the time of the burglary, Hawkins Corley was the County Treasurer's deputy, and knew the combination to the latter's safe. He was a witness for the State, and his testimony was in substance as follows:

A few weeks before the offense was committed, the defendant, J. D. Fort, applied to him to borrow $500. Three or four days later the defendant, H. W. Fort, applied to him to borrow for himself and the defendant, J. D. Fort, the sum of $1000. Subsequently and before the burglary, both the defendants proposed to borrow about $4000 with which to buy a stock of goods, and that the witness should lend it to them and become a partner in their business. The witness on each of these occasions declined to let the defendants have any money, saying that he could not lend the public funds. About ten days before the burglary, the defendants met witness, and after drinking with him, expressed a desire to have a private conversation

Fort v. State.

with him, to which he assented. They then asked him if he knew that the county treasury was going to be robbed. He replied that he did not know it. They said it was going to be robbed, and asked him if it was going to be done, "why they (the three) had not as well have some as anybody?" The witness replied that if the robbery was going to be committed, they (meaning the three) had as well have some of the money as anybody else. They then asked him if he knew the combination to the safe door, and he replied that he did. In reply to an inquiry made by the defendants, the witness told them that there was then in the treasury about $21,000. His further testimony was to the effect that in this conversation he agreed to aid the defendants in stealing the county funds; but that a few days afterwards he told them that he did not believe he "had the nerve," and they would have to let him off. That they were unwilling to "let him off," but told him that if he could not participate in the burglary, to give them the combination to the safe, "and they would do the work." That on the Tuesday or Wednesday preceding the Thursday on which the offense was committed, he gave the defendants the combination of the safe on a piece of paper. That on his expressing a fear that if the safe was opened by the combination he would be implicated, the defendant, H. W. Fort, said he would break the safe to pieces.

The fifth clause of the court's charge to the jury is as follows:

You are instructed that the witness, Hawkins Corley, is an accomplice, and that a conviction of defendants cannot be had upon his testimony unless corroborated by other evidence tending to connect the defendants with the commission of the offense, and the corroboration is not sufficient if it merely shows that the offense was committed, and the circumstances thereof. And if such corroboration does not appear in the testimony, you should acquit. But if you find from the evidence that the testimony of witness, Corley, has been corrob-

orated by the evidence as above indicated, and if such corrob-
oration considered in connection with Corley's testimony, and
all the other facts and circumstances in proof in this cause,
satisfies your minds of the guilt of the defendants beyond a
reasonable doubt, you should convict."

*Duval & Cravens,* for appellant.

1.   Corley's confession was not supported by such evi-
dence as the law requires.  The testimony of an accomplice
should be corroborated by "evidence admitting of no sus-
picion as to such parts as satisfactorily show that he has not
fabricated the story."  "He should be confirmed in some fact
affecting the individual he accuses."  It should reach the
identity of the person charged.  *Whart. Cr. Ev., secs. 441–2;
Roscoe Cr. Ev., sec. 130; 42 Vt.. 95; 55 Barb., 450; 3 Camp.,
131; 3 Stark, 34; 38 How. Pr., 369; Mansf. Dig., sec. 2259.*

2.   Opinions of witness, save certain well known excep-
tions, are not evidence, and Wilkins' evidence is not admissible.
*2 Best on Ev., sec. 511, p. 864; Dyer, 53.*  The evidence upon
which the witness arrived at his conclusion was proper, but
not the conclusion or opinion itself.  *11 Mo., 230; 7 Mo., 231.*

3.   If there was a reasonable doubt of the absence of de-
fendant, he was entitled to an acquittal.  *17 Pac. Rep., 522;
42 Mich., 261; 31 Mich., 1.*

This feature was not touched in any of the instructions
given.  *Whart. Cr. Ev., 19th ed., sec. 333; 86 Penn. St., 54;
95 id., 418; 50 Mich., 233; 65 Ga., 756, etc.*

4.   The court erred in instructing the jury that Hawkins
Corley was an accomplice.   That was a fact for the jury.  *50
Ark., 534; 36 id., 126; 9 N. W. Rep., 698; 11 Pac., Rep.,
799; Const. Ark., art 7, sec. 23.*

5.   The introduction and use of the bail bond in compari-
son with the slip found on the safe was error.  *32 Ark., 337;
1 Gr. Ev., secs. 577–8; Whart. Cr. Ev. (9th ed.), secs. 555–7;
10 Cent. Law Journ., 121; 39 Md., 90; 17 Am. Rep., 540; 9
Cow., 94; 2 Johns. Cas., 210; 2 Park. C. C., 210; 22 N. J.*

*L.*, *212* ; *28 Penn. St.*, *318* ; *27 Md.*, *6* ; *14 id.*, *573* ; *56 id.*, *439* ; *Leigh.*, *216* ; *1 Duval (Ky.)*, *335* ; *3 Brev.*, *51* ; *1 Hawks.*, *6* ; *1 Ired.*, *16* ; *21 Ill.*, *375* ; *32 Ark.*, *338* ; *9 W. S.*, *270*, and many other cases.

*W. E. Atkinson*, Attorney General, and *T. D. Crawford*, for appellee.

1. Hawkins Corley, the accomplice, was sufficiently corroborated. *110 Mass.*, *104*.

2. Wilkins' evidence admissible ; he stated merely what the appearance of· the door suggested to his mind, after stating what the facts were. *117 Mass.*, *122*, *127* ; *17 Mich.*, *99* ; *41 Iowa*, *219* ; *84 N. C.*, *756* ; *66 Md.*, *419*. It was impossible to bring the punch and door into court, and it was the best evidence obtainable under the circumstances.

3. All the facts surrounding the alleged crime should be proven, and it was not improper to admit Corley's testimony that the Forts had approached him to borrow the county money. *43 Ark.*, *99* ; *18 Mich.*, *228*.

4. The instructions given fairly covered the questions of *alibi* and reasonable doubt.

5. The slip found was admitted as part of the *res gestæ*. The objection to its comparison with Fort's signature fails, because the paper was proved genuine. *32 Ark.*, *337*.

COCKRILL, C. J. In the course of its charge the court told the jury that Hawkins Corley, upon whose testimony the State relied for a conviction, was an accomplice. The appellants, without making specific objection to that part of the charge at the trial, but relying solely upon a general objection to the entire charge, now single out that clause, and argue that it is erroneous because it assumes that they are guilty. A survey of the whole charge does not warrant the assumption, but leaves the unmistakable impression that the court did not intend to interfere with the jury's right to believe Corley's statement, but to inform them that if they believed it, it would still re-

quire other evideuce connecting the defendants with the com-

**2. Same: Refusing unnecces-sary charge.** mission of the offense to authorize a conviction.    The charge fairly covered the whole subject pertaining to the defendants' guilt or innocence, and no objection worthy of serious reflec-- tion is urged against any other part of it.    As it sufficiently covers every other phase of the case, it was not error to refuse other prayers for instructions.

Our attention is directed to many objections to the admis- sion and rejection of testimony.    Most of them relate to rulings of the court which were clearly right, or were not

**3. Evi-dence: Acts of co-conspira-tors.** prejudicial to the defendants.    Of the former class is the ob- jection in Hiram Fort's case to the testimony of Corley, to the effect that Jeff Fort made propositions to obtain money through him from the county treasury, at a time when Hiram was not present.    Proof was adduced to the effect that the two together renewed the offer, and a foundation for the testimony was laid also, by proof tending to show that their conduct on these occasions was part of a conspiracy to induce Corley to aid them in robbing the treasury.

**4, Practice in Su-preme Court: Evidence favorable to appellant.** On the other hand, the admission of the evidence of the witness offered by the State to prove that a writing, supposed to have been left on the scene of the crime by one of the per- petrators, was the work of one of the defendants, could not have prejudiced him, because the witness' testimony was alto- gether favorable to him ; and it cannot be said that the court erred in permitting the bail-bond, which it was conceded con-- tained the defendant's genuine signature, for the purpose of showing by comparison that the defendant wrote the crimi- nating paper, because no objection was made, at the trial, to its introduction.

**5. Evi-dence: Appear-ances.** Again, Wilkins testified on behalf the State, as to the condition of the safe-locks and doors after the burglary, and was permitted, against the defendant's objection, to state that force had been applied from the outside to break the lock of the inner vault door, which had been secured by an ordinary

Fort v. State.

lock and key. This, however, was only a conclusion of fact drawn from appearances—it was in reference to an ordinary transaction which any man of common understanding was capable of comprehending, but which could not be reproduced or described to the jury precisely as it appeared to the witness; and while it may not be the right óf a party to demand an expression of opinion of a witness under such circumstances, it is not reversible error to permit it. *Commonwealth v. Sturtivant, 117 Mass., 122; McIntosh v. Livingston, 41 Iowa, 219; 1 Thompson on Trials, 379.*

Whittaker, on the part of the defendant, who had also examined the locks and doors, was allowed to testify fully to the conditions he observed, and it was not error to refuse to allow him to answer the question, "Do you think the inner vault door was opened first and the lock broken afterwards?" The question called for a speculative opinion, not necessarily based on what he had observed. It called for a more comprehensive opinion than Whittaker had given.

6  SAME: Opinion of witness

It is argued that there is no evidence corroborating the testimony of the accomplice which tends to connect the defendants with the commission of the offense.

7. SAME: Corroborating testimony of accomplice.

To test the legality of a verdict under such circumstances, the rule of appellate courts is to take the strongest statement of the case against the defendant that the evidence would warrant the jury in finding, if the facts were specially found. Pursuing this course we have this state of facts, outside of the accomplice's testimony.

In Jeff Fort's case we have his admission, upon the witness-stand, that he entertained a proposition from Corley to take the combination of the Treasurer's safe and enter the scheme to rob the treasury, and that he agreed to submit the matter to his brother Hiram, which he says he did; and in Hiram's case we have the testimony of several witnesses to his confession that he had joined in the conspiracy and obtained the combination of the safe from Corley to effect the burglary. It

was proved that both the defendants were farmers residing some three miles from the county seat, where the Treasurer's funds were kept; that they were in town on the day of the burglary, and left, as though for home, late in the afternoon; that they returned to the town after dark on an inclement, blustering winter night, without any ostensible cause, leaving before daylight, and that they afterwards denied having been in the town during the night. The burglary was committed that night by some one who had the combination which opened the safe, and who shattered the lock after the safe was opened as a blind to detection.

These facts certainly tended to connect the defendants with the commission of the offense, and the jury was warranted in finding that they were sufficient corroboration of the testimony of the accomplice.

Let the judgment be affirmed.