## THE LIVERPOOL & LONDON & GLOBE INS. CO. LTD. *v.* PAYTON.

### Opinion delivered April 16, 1917.

1. INSURANCE—STATEMENT IN APPLICATION—STATEMENT TO AGENT—ESTOPPEL.—In an application for a policy of fire insurance, where the insured stated the present value instead of the cost price, the company is estopped from avoiding the policy on that ground, where the insured explained the facts to the insurer's local agent, which latter inserted the figures in the application.

2. INSURANCE—STATEMENTS IN APPLICATION—OTHER INSURANCE.—The application for a policy of fire insurance asked the question whether the applicant had ever been denied insurance on the property in question. *Held,* the answer no to the question was correct, although a company which did not write this kind of business had refused to write it.

3. INSURANCE—STATEMENTS IN APPLICATION—ESTOPPEL.—Where an applicant for a policy of fire insurance explained the facts to the local agent of the insurance company, which agent inserted the answers in the application, the company can not defeat the policy on the ground that the applicant made false answers as to insurance having been refused by other companies.

4. INSURANCE—PROOF OF LOSS—WAIVER.—Necessity for the presentation of proofs of loss are waived when the insurance company's local agent told the insured that the claim would be paid, and an adjuster arranged a meeting for final settlement.

5. INSURANCE—WAIVER OF PROOF OF LOSS—AUTHORITY OF LOCAL AGENT.—A local agent with authority to solicit fire insurance, write and deliver policies, and collect premiums, and to notify the insurance company of losses, has *prima facie* authority to waive presentation of proof of loss.

6. INSURANCE—FIRE LOSS—STIPULATION IN POLICY CONFLICTING WITH STATUTE.—A provision in a fire insurance policy in conflict with Kirby's Digest, § 4375, is void.

Appeal from Sebastian Circuit Court, Fort Smith District; *Paul Little,* Judge; affirmed.

*J. A. Watkins* and *S. M. Wassell,* for appellant.

1. No proof of loss was furnished the company or waived by it.   122 Ark. 357; 120 *Id.* 268.

2. There was a breach of warranty. The answers were untrue and voided the policy.   4 L. R. A. (N. S.) 607; 27 Mich. 429; 177 U. S. 519; 183 *Id.* 308; 22 Sup. Ct. Rep. 133.

3. No notice was given nor proofs of loss filed within the sixty days.   87 Ark. 171; 72 *Id.* 484; 84 *Id.* 224; 91 *Id.* 43; 88 *Id.* 120.

4. Instruction No. 7, asked by defendant, should have been given.   82 Ark. 401-2; 57 *Id.* 279; 58 *Id.* 565, 528; 261 U. S. 613; 14 L. R. A. 297; 16 *Id.* 33.

5. The contract limited the recovery to three-fourths of the cash value of the property destroyed.

*Kimpel & Daily,* for appellee.

1. Proof of loss was waived.   122 Ark. 357; 120 *Id.* 268.

2. The answers in the application were true, and the company can not take advantage of the mistakes of its agents in writing down incorrect answers. Each of the instructions requested by the insurance company ignores the rule that the knowledge and acts of the agent are those of the company, and the company is estopped. 52 Ark. 11; 64 *Id.* 253; 71 *Id.* 242; *Ib.* 295; 79 *Id.* 315; *Ib.* 270; 81 *Id.* 509, 206; 102 *Id.* 151; 108 *Id.* 261; 79 *Id.* 315; 52 *Id.* 11.

3. The policy was for $500 and the liability is for that amount.   72 Ark. 368; 75 *Id.* 409.

McCULLOCH, C. J.   This is an action on a fire insurance policy where there was a total loss of the insured building and some of the insured contents and a partial loss of other property insured. The insurance policy was for $500 on gin house; $1,350 on machinery, such as gin stands, feeders, condensers, presses, elevator, etc., $300 on engine, boiler, smokestack, etc.; $75 on seed house, and $100 on cotton seed while contained in the seed house; making a total of $2,325.

There was a recovery below of the sum of $1,890.80, which included the full amount of insurance on the building, and the defendant insurance company has appealed. The company defended on the ground that there was a breach of warranty with respect to the statement of the assured in his application concerning the original cost of the personalty covered by the policy, and with respect to the statement of the assured to the effect that no other company had at any time declined to insure the property, or any part of it. Another defense presented is that proof of loss was not furnished within sixty days, as required by the terms of the policy. The issues were submitted to the jury on instructions, the correctness of which is not challenged on this appeal, but it is insisted that according to the undisputed evidence the issues should have been determined in favor of the defendant, and that a peremptory instruction should have been given to the jury.

The property covered by the policy was a gin outfit owned by the plaintiff, J. C. Payton, which was situated at Mansfield, Arkansas, and the policy was negotiated, written and delivered by Mr. W. R. Alexander, the local agent of the company. In the application for insurance there was a question and answer with reference to the building as follows:

"Q.    What did they severally cost when erected?
"A.    Gin house, $800."

There was another question and answer in the application with respect to the engine and boiler, as follows:

"Q.    What did you pay for it?
"A.    One thousand dollars."

It is contended that according to the undisputed evidence these answers were untrue and constituted breaches of the warranty. It is not correct to say that the testimony is undisputed as to the cost of the building, for one of the witnesses testified that it cost $900. The

evidence establishes the fact that neither the agent of the company, Mr. Alexander, nor Payton, the assured, understood that the question related to the original cost, but they thought that the inquiry was concerning the value of the articles at the time that the policy was written. Mr. Alexander was the agent at Mansfield and walked out to the gin to see the plaintiff about securing the insurance on the property. He testified that he discussed with Payton the question of value of the different items to be incorporated in the policy and made pencil memoranda of what was determined in the negotiations to be the values. It is undisputed that Payton stated to Alexander that the engine and boiler were second-hand articles which Payton had purchased and that as installed in the gin plant were then of the value of $1,000. The proof shows that the engine and boiler cost Payton less than that sum, but the jury were warranted in finding that the statement concerning the value of those articles properly installed in the gin was the amount stated in the application. After securing the data from which the application was to be prepared Alexander went back to his office and copied the amounts into the printed application and later presented the application to Payton, who signed it, and it was forwarded to the company.

(1) The evidence shows that Alexander alone was responsible for the mistake in inserting the present value of the articles into the blank for the answer concerning the actual cost. The undisputed evidence shows that Alexander knew that the engine and boiler had been bought second-hand by Payton and it was not claimed that they actually cost the amount inserted in the application. Under those circumstances the agent of the company was responsible for the mistake, and his knowledge was the knowledge of the company, and the company is estopped to plead the incorrect statement in the application as a breach of warranty. *People's Fire Ins. Assn. of Arkansas* v. *Goyne*, 79 Ark. 315.

Counsel for the defendant rely upon decisions of the Supreme Court of the United States holding in substance that an applicant for insurance can not plead estoppel, and thus escape responsibility for untrue statements of facts which he permits an agent of the insurance company to insert in the application by showing that the agent was responsible for the incorrect statement and was actually advised as to the true facts. The cases relied on were fully discussed by this court in the case cited above, and we declined to follow them and declared the law on that subject to be as follows (quoting from the syllabus): "An insurance company may be estopped by the conduct of its agent, acting within the apparent scope of his authority, from availing itself of a false answer to a material question or of any other breach of warranty or violation of the provisions of the application or policy, notwithstanding clauses in the application or policy provide that it shall not be bound by any such conduct of its agent."

The rule thus announced has been followed by this court in numerous cases which are cited on the brief of plaintiff's counsel. Those cases are absolutely decisive of the question now before us, and we are of the opinion that the evidence makes out a clear case of estoppel on the part of the insurance company to plead the breach of warranty caused by the conduct of its own agent.

(2-3)   Another question in the application was this:

"Q.  Has this, or any other, company or any other agent of this or any other company at any time declined to insure you on said property, or any part of it?

"A.  No."

The facts as disclosed by the testimony were that Payton applied to another agent for this insurance and that an application was made out by the agent and sent in to one of the general agents in Little Rock, but later Payton was informed by the local agent that he had no company writing gin insurance. He then applied to Mr.

Alexander, stating to him what had occurred in the transaction with the other agent. In fact, Payton had previously declined to give the insurance to Alexander on the ground that he was going to give it that year to the other agent, Mr. Hodges, but that when informed by Hodges that his company would not take gin insurance, he turned to Alexander, who was soliciting the business. The testimony of Alexander, as well as that of Payton himself, shows that it was understood between them that the application had not been declined within the meaning of the question propounded, and the answer was inserted in the application by Alexander himself with full knowledge of all that had occurred between Payton and the other agent. We do not think that the answer was an incorrect one within the meaning of the question propounded, which manifestly related to a refusal by some company or agent engaged in that kind of insurance business. It did not refer to a refusal by a company not engaged in that business. Moreover, the actual knowledge of the truth of the matter possessed by the agent was the knowledge of the company, and it comes within the rule announced by this court in the *Goyne* case, *supra*.

(4-5) The contention of the plaintiff was that the failure to furnish proof of loss was waived by the company, and the facts concerning that branch of the case were as follows:

Alexander was what is ordinarily termed a recording agent, that is to say, an agent with authority to solicit insurance, write and deliver policies and collect premiums, and also with authority to notify the company when loss occurred. The next day after the fire occurred Payton and Alexander had a conversation concerning the matter, and Alexander agreed to notify the company, and stated that an adjuster would be sent to adjust the loss. Alexander sent in the notice to the company, and in two or three weeks the adjuster came and was introduced to Payton by Alexander. The details of

the fire and other matters concerning the settlement were discussed between the adjuster and Payton, and the adjuster asked particularly about a mortgage on the property to the Fort Smith Cotton Oil Company (which company is plaintiff in this action) and Payton answered the inquiry in the affirmative. The adjuster then asked Payton how it would suit him for them to meet in Fort Smith the following Thursday and "settle the matter up." Payton expressed satisfaction with that arrangement, and they parted with the understanding that they were to meet in Fort Smith on the day named, but before that day Payton was informed by Alexander that Mr. Wilson, the adjuster, had telephoned him that he could not be in Fort Smith on that day. Nothing further was heard from the adjuster, but a few weeks later Payton applied to Alexander for information concerning the settlement, and was assured by Alexander that the loss was known to be an honest one, and that payment would be made in due time. Alexander advised Payton not to employ a lawyer for the reason that there would be a settlement of the loss. Payton was working in the country at the time, and only came back to town about every two weeks. When he came back from his next trip to the country the time (sixty days) was about up for filing proof of loss, and when Payton made inquiry of Alexander about the matter he was again assured that settlement would be made with him in a short time. Nothing further was done, and about a week or ten days after the expiration of the time allowed for furnishing proof of loss Payton met the adjuster in Fort Smith and was told by the adjuster that payment of his policy would be refused.

These facts constitute a waiver of the proof of loss. The testimony was sufficient to show *prima facie* authority on the part of the local agent to waive proof of loss, and no testimony was introduced showing a limitation upon that authority. *Citizens Fire Ins. Co.* v. *Lord,* 100

Ark. 212; *Concordia Fire Ins. Co.* v. *Mitchell,* 122 Ark. 357. In addition to that the course of conduct of the adjuster was such as to lead Payton to believe that settlement would be made without requiring proof of loss, and it was incumbent on the company, if it intended to insist upon that requirement, to give notice to Payton of that fact. The adjuster came to Mansfield to meet Payton as promised by the local agent, and after going over the transaction fully they agreed to meet in Fort Smith to make a settlement, and that meeting was postponed indefinitely without any notice or without the slightest intimation to the plaintiff that he would be required to make out a proof of loss. On the contrary, he was assured by the local agent that payment would be made in due course of time, and that he need not go to any expense in employing counsel. The facts presented on that issue constituted no defense to a suit on the policy, and the court was correct in refusing to direct a verdict in favor of defendant.

(6) The only other question raised is that the court erred in instructing the jury that if they found for the plaintiff to find in the full amount of the policy on the building. The instruction was in accordance with the statute of this State, known as the Valued Policy Law. Kirby's Digest, § 4375. The stipulation of the policy in conflict with the terms of the statute was void.

Judgment affirmed.