FIREMEN'S INSURANCE COMPANY *v.* LITTLE.

4-3478

Opinion delivered September 24, 1934.

*Verne McMillen,* for appellants.

*O. H. Sumpter,* for appellee.

MEHAFFY, J. The appellee, Annie E. Little, was the owner of a frame hotel or rooming house located at 201 Prospect Avenue in the city of Hot Springs, Arkansas, and was the owner at the time the policies hereinafter mentioned were issued, and at the time of the fire. Policies were issued covering said property as follows:

Firemen's Insurance Company ........................................$1,000
National Fire Insurance Company ................................. 1,000
City of New York Insurance Company ........................... 2,000
Georgia Fire Underwriters (two policies) .................... 3,500
North British & Mercantile Insurance Company ...... 2,500

The appellee executed her promissory note in the sum of $25,000 payable to appellee, Ed B. Mooney, due nine months after date, and to secure the payment of said note, executed a deed of trust conveying the property on which the insured building was located to Claude E. Marsh, trustee. Mooney borrowed $20,000 from the National Realty Company, and pledged the $25,000 note mentioned as security for the payment of his note. A mortgage clause was attached to each of the policies, providing the loss, if any, should be payable to Ed B. Mooney, mortgagee, as his interests might appear.

Separate suits were filed by appellee, Annie E. Little, against each of the above-named insurance companies, and the National Realty Company and Ed B. Mooney were also made defendants. It was alleged in each complaint that the building was totally destroyed by fire, and appellee prayed judgment for the full amount mentioned in each policy. She also alleged that the defendants, National Realty Company and Ed B. Mooney, falsely and without right claimed a mortgage lien on the property, and also claimed the debt due under the policies.

The National Realty Company and Ed B. Mooney filed answers and cross-complaints, asking that the causes be transferred to equity, and the mortgage be foreclosed. The appellee, Annie E. Little, filed answer to the cross-complaints, and alleged that the loan made by Ed B. Mooney to her was usurious and void, and prayed that the cross-complaints be dismissed.

The insurance companies answered, admitting that the policies of fire insurance were in force, but denying that the building was totally destroyed by fire. They admitted the property was damaged by fire, but alleged that the policies provided that the insurance company should not be liable for more than it would cost the insured to repair or replace the same with material of like kind and quality at the time of the loss, and that it would have cost the insured not exceeding $5,000 to make the repairs. Each of the appellants offered to confess judgment for its proportion of the damage upon the basis of $5,000 total damage. The cases were transferred to equity and consolidated for the purpose of trial. By agreement the consolidated cases were tried as to the liability of the insurance companies, and the question of the liability of appellee, Annie E. Little, under her note and mortgage to Ed B. Mooney, was reserved for determination of the court. The only question before this court is the amount of liability of the insurance companies under their policies.

The chancery court found that there was a total loss, and that the value of any salvage was less than the cost of removing same, and entered a decree against

each of the insurance companies for the full amount of the policies, together with attorney's fee of 15 per cent. and a penalty of 12 per cent. The case is here on appeal by the insurance companies.

J. C. Copeman, a witness for the appellee, testified that he was a construction superintendent, and had just completed the Army & Navy Hospital; that he was called upon to make an examination of the property at 201 Prospect Avenue, owned by Mrs. Little, and made a report of his investigation to Mr. Little. Witness testified that, upon a thorough inspection of the property and what there was still remaining of the building, in his opinion there was nothing left that could be used in the reconstruction of any building at all; that, if any one would take the property over now, it would cost them between $400 and $500 to take the debris off in order to get ready to put up a new building on the site; that it was his opinion that the building, as a building, was a total loss. He did not make an estimate to rebuild the building. He made the examination on September 1, 1933. He examined the foundation, and the foundation was bad and crumbly through the heat that had been in the building. He did not believe it could be used; it would have to be torn out if any structure of any kind was built.

Henry P. O'Hagan, a witness for appellee, testified in substance that his profession was supervising engineer for the War Department, and he had been connected with the work in Hot Springs in the construction of the new Army & Navy Hospital, the nurses quarters, known as the annex, and two sets of double NCO quarters. The last two were built by himself without a contractor; he did the purchasing and hiring. He made an inspection of the property known as 201 Prospect Avenue for Mrs. Little; that the building as it now stands is, in his opinion, of no value; the owner might salvage some firewood, but doubted if any contractor would offer any money for the material now in the building; did not think that any possible salvage would be worth what it would cost to take it down and remove it; believed that the owner would have to pay to have the property cleaned

up. In his opinion the property is a total loss. He made the examination of the property about September 1, 1933.

G. Solberg, a witness for appellee, testified in substance as follows: that his business was general 'superintendent, building supervisor, and he had been recently engaged in construction work in Hot Springs; that he is supervisor of the new nurses' quarters, Army & Navy Hospital; that he inspected the property at 201 Prospect Avenue and found, in his estimation, the whole thing a complete loss; there would not be any way to get anything out of the salvage on any of the material. It would not even pay to strip the thing and take it down for the salvage of the material. It is a complete loss in his estimation. He made the examination about four weeks ago.

Captain E. M. George, a witness for appellee, testified in substance that he was captain of the Quartermaster Corps, U. S. Army, and that Solberg is now employed as general superintendent for the H. B. Ryan Company of Chicago, Illinois, and in that capacity is looking after the building of the $160,000 nurses' quarters, under witness' supervision. He considers Solberg a competent judge of construction material, and of materials that go into building. H. P. O'Hagan is superintendent of construction and civil engineer, and has been in the employ of the War Department for thirty years under the direct supervision of witness for the last six years. Witness considers him a competent man in his business, and a judge of construction material and buildings. J. C. Copeman is construction superintendent and has been for the past eighteen years. In all witness' experience he is the best building superintendent witness has ever had. Mr. O'Hagan is employed by the War Department and Mr. Solberg and Mr. Copeman are employed by general contractors. They have to do with government buildings and commercial buildings. Witness is construction quartermaster. He inspected the building at 201 Prospect Avenue and considers the building a total loss and a menace. The inspection was made about a month ago.

O. M. Harrison, a witness for appellant, testified in substance that he was a building contractor, had been in that business for eighteen or twenty years, and had built numbers of buildings in Hot Springs, one right across the street on Prospect Avenue, for Captain Rix; made an estimate of the damage to the building at 201 Prospect, August 26, 1932. The building was not destroyed by fire, but was damaged. Witness went over the building carefully, and his estimate of the cost of repairing the building and replacing all the damaged parts at that time was $6,164.40. He was at that time ready and willing to take a contract to make the repairs with the exception of the heating plant. The foundation of the building was not damaged in any way by the fire. His estimate included every part of the building that was damaged in any way, with the exception of the furnace. Several rooms in the building were not damaged by the fire, the canvas and paper still on them. If witness owned the building and wanted to build one like the building was before the fire, he would use the part remaining as a basis for restoring the building.

W. W. Brown, a witness for appellant, testified that he lived in Little Rock and was a building contractor; had been actively engaged in that business for thirty years; made an estimate on the building at 201 Prospect Avenue on November 20, 1932, and estimated that to repair all the damage caused by the fire the cost would be $5,525.87. Witness proposed to make the repairs for that amount. His estimate consisted of removing the debris, hauling it from the premises, a little brick work, topping one flue, sufficient lumber to replace that which was damaged or destroyed, and mill work, which consists of doors and windows, replacing all that were damaged, a composition roof, repairs to plumbing, and gas fittings. The fire was confined practically to the first and second floors and the roof; no damage to timbers below the first floor; it was necessary to replace a good part of the mill work on the first floor. A part of the outside walls on the left side toward the rear would have to come down from the second and third stories; the studs were damaged there, and a portion of that wall;

the larger part of the building remained intact. If witness desired to replace the building in the condition it was before the fire, he would use that part remaining. Any reasonable man would. There was 65 per cent. of the building with the materials in place that were sound values. Witness had been engaged in building residences and apartments for the better class of residents in Little Rock. Witness made estimates for both insurance companies and insured. The damage by the fire was about 35 per cent. Witness introduced photographs of the building. Witness' idea of total loss of a building is when it has lost its identity as a building, and this building has not lost its identity.

George H. Burden and J. D. Johnson testified as to their experiences, and that the building was damaged about 35 per cent. Their testimony was substantially the same as that of Brown.

F. J. W. Hart testified for appellee in rebuttal that he was an architect; had been engaged in that profession about 48 years, and testified as to property that he had built. There was no damage by fire below the first floor. The damage there was caused by water, and caused a settlement of the piers and old flues and chimneys. In his opinion the flood of the water caused damage to the piers. Three days afterward there was one of the piers kicked out entirely caused by flooding of the water.

The policy of the North British & Mercantile Insurance Company was introduced in evidence, and it was agreed that all of the other policies sued on were the same with the exception of dates and amounts, and that the concurrent amount of insurance permitted was $10,000. Each of the policies contained the following: "This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurred and the loss or damage shall be ascertained or estimated according to such actual cash value with proper deduction for depreciation however caused and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality."

"This company shall not be liable, beyond the actual value destroyed by fire for loss occasioned by ordinance or law regulating construction or repair of building."

It is the contention of the appellants that there was no competent evidence tending to support the finding of the chancellor that the building was a total loss. We have set out the appellee's testimony substantially as contained in appellant's abstract and brief. From this evidence it appears that J. C. Copeman, Henry P. O'Hagan, G. Solberg and Capt. E. M. George, were all men of experience in the construction and value of buildings. Each of them had had considerable experience. Each of them had inspected the property, made a careful examination of it, and testified that the building was a total loss. Some of these witnesses stated that there would not be any way to get anything out of the salvage on any of the material; it would not even pay to strip the thing and take it down for the salvage of the material. Another one testified that after careful inspection of the property he was of the opinion that there was nothing left that could be used in the construction of any building at all. Another one said that he did not think any possible salvage would be worth in value what it would cost to be taken down and removed. These were facts testified to by these witnesses after a careful examination and inspection of the property. There was no effort to show that these witnesses were not skilled.

"A skilled witness is one possessing, in regard to a particular subject or department of human activity, knowledge and experience which are not acquired by ordinary persons. Where he testifies as to facts, he must be shown to have adequate knowledge of the matters of which he speaks, and where he states an inference he must have the ability, skill, and experience, not only to observe accurately, but to draw the correct conclusion from what he observes. Such a witness may be qualified by professional, scientific, or technical training, or by practical experience in some field of activity conferring on him special knowledge not shared by mankind in general, the rule in this respect being that one who had been engaged for a reasonable time in a particular pro-

fession, trade, or calling, will be assumed to have the ordinary knowledge common to persons so engaged." 22 C. J., 519-520; 11 R. C. L., 571, 642.

These witnesses were competent to express the opinion that the building was a total loss. *Ringlehaupt* v. *Young,* 55 Ark. 128, 17 S. W. 710; *Transportation Line* v. *Hope,* 95 U. S. 297; *Bedell* v. *Long Island Rd. Co.,* 44 N. Y. 367; *Fort* v. *State,* 52 Ark. 180, 11 S. W. 959; *Miller* v. *State,* 94 Ark. 538, 128 S. W. 353.

The witnesses of appellee had made a personal inspection. They were therefore more competent to testify, and their testimony would be more satisfactory than if they had answered hypothetical questions, or had testified from having heard the facts from other witnesses. There could be no better method of acquiring knowledge as to the condition of the building as to whether it was a total loss than for competent witnesses to make an examination and inspection of it.

"Whether or not the qualification of a witness with respect to knowledge or special experience is sufficiently established is a matter resting largely in the discretion of the trial court, whose determination is usually final, and will not be disturbed by an appellate court, except in extreme cases where it is manifest that the trial court has fallen into error or has abused its discretion, and that prejudice to the complaining party has resulted, even though the appellate court might have decided differently if the question had been presented to it in the first instance." 22 C. J., 526-527.

After the inspection by these witnesses and their testimony was given on direct examination, the appellants had an opportunity to cross-examine them to find out what the extent of their examination was, what portion of the building was left standing, if any, and whether or not it could be used in the construction of another building.

The evidence of the appellee was contradicted by appellant's witnesses, W. W. Brown, J. D. Johnson, George H. Burden and O. M. Harrison. These were competent witnesses who had examined the building and testified that the building was not a total loss. One of ap-

pellee's witnesses testified that the foundation could not be used; that one pier had already kicked out, and that it was so damaged by water that it could not be used in building another building. Appellants' witnesses testified that it could be used, although none of them contradicted the witness about the pier, and none of appellants' witnesses testified about the damage by water, and so far as the record shows, the damage by water was caused by the fire, that is, in an effort to extinguish the fire. At any rate, there is no evidence of water causing damage in any other way. The witnesses of appellants testified however, that the foundation could be used, and that it was not damaged by fire.

These were all questions of fact, and we have many times held that a chancellor's finding of fact will not be disturbed on appeal unless clearly against the preponderance of the evidence, and we can not say that the finding of the chancellor is clearly against the preponderance of the evidence in this case.

Appellants cite and rely on the case of *Springfield Fire & Marine Ins. Co.* v. *Ramey,* 245 Ky. 367, 53 S. W. (2d) 562. In this case there is no showing that the witnesses had made any inspection or examination, and neither of the witnesses testified to any facts at all, but each simply stated that in his opinion there was a total loss. The court, however, did not hold that this testimony was incompetent, but the court said: ''The appellants succumbed to the inviting temptation, which often presents itself to opposing counsel, to cross-examine the other party's witnesses, and thus aided in the development of the facts. When the evidence appearing as it is in the record, and thus brought in, it cannot be claimed that no competent evidence was presented authorizing the submission of the issues to the jury.''

The court held that it should have been submitted to the jury. The court also held: ''The only evidence offered by the appellee other than that developed by the appellants on cross-examination of her witnesses was mere opinions of the witnesses, expressed in response to improper questions. It is a wise and salutary rule that a witness must testify to facts within his knowledge and

not a mere conclusion, except experts in response to hypothetical questions which must embrace the facts. To this general rule there is another exception which permits the admission of opinion evidence, not conclusions, when, from the very nature of the subject-matter under investigation, no better evidence can be obtained.''

The court held that in cases of the kind before it, that a witness could not be allowed to give his opinion without requiring him to state the facts upon which it is premised. The court then held that the instruction offered by appellant defining ''total loss'' was erroneous.

In the instant case the best qualification that witnesses could have had was the inspection and examination of the building. The main question in this case is whether there was a total loss, and, as we have said on this question, there was a conflict in the evidence. We said in a recent case: ''If a building is destroyed as a building, so that the walls, although remaining, are in such a condition that they will have to be torn down, there is a total loss.'' *St. Paul F. & M. Ins. Co.* v. *Green,* 181 Ark. 296, 29 S. W. (2d) 304; *Williams* v. *Hartford Ins. Co.,* 54 Cal. 442, 35 Am. Rep. 77; *Oshkosh Packing & Provision Co.* v. *Mercantile Ins. Co.,* 31 Fed. 200; *Penn. Fire Ins. Co.* v. *Drackett,* 63 Ohio St. 41, 57 N. E. 962, 81 Am. St. Rep. 608; *Teter* v. *Franklin Fire Ins. Co.,* 74 W. Va. 344, 82 S. E. 40; *German Ins. Co.* v. *Eddy,* 36 Neb. 461, 54 N. W. 856, 19 L. R. A. 707; *Seyk* v. *Miller's Nat. Ins. Co.,* 74 Wis. 67, 41 N. W. 772, 3 L. R. A. 523; *Lowry* v. *Fidelity-Phoenix Fire Ins. Co.,* 210 Mo. App. 121, 272 S. W. 79; *Fire Ass'n* v. *Strayhorn,* Tex. Civ. App. 211 S. W. 447; *Ins. Co.* v. *Heckman,* 64 Kan. 388, 67 Pac. 879.

Under the authorities above cited, the chancery court was justified in finding that there was a total loss. The trial court held that the ordinance of the city of Hot Springs was inadmissible, and therefore did not consider it. It is unnecessary to discuss it here because the appellants not only did not complain about it, but urged that the trial court decided it correctly. Whether it was correctly decided or not is immaterial here.

It is finally insisted that the clause of the policy above set out limits the liability of appellants, and that they are not liable for any loss beyond the actual cash value of the property, and in no event shall the recovery exceed what it would then cost the insured to repair or replace the same, etc. It is insisted that the appellees are bound by the contract, and cannot recover anything in excess of what it would cost to repair the building. That is not true in cases where there is a total loss.

Section 6147 of Crawford & Moses' Digest provides that in case of total loss the insurance company is liable for the full amount stated in the policy. *American Central Ins. Co.* v. *Noe*, 75 Ark. 406, 88 S. W. 572; *Farmers' Home Mutual Fire Ass'n* v. *McAlister*, 171 Ark. 574, 285 S. W. 5; *Nat. Union Fire Ins. Co.* v. *Kent*, 163 Ark. 7, 259 S. W. 370.

We find no error, and the decree is affirmed.