AETNA CASUALTY & SURETY CO. OF HARTFORD, CONN. *v.*
BRASHEARS.

5-1059                                    297 S. W. 2d 662

Opinion delivered November 26, 1956.

[Supplemental Opinion on rehearing delivered January 28, 1957.]

*Lookadoo, Gooch & Lookadoo,* for appellant.

*McMillan & McMillan* and *Otis H. Turner,* for appellee.

ED. F. McFADDIN, Associate Justice. This action — by appellee against appellant — to recover damages for personal injuries brings to us: (a) a study of Act 46 of 1947 (now found in § 66-517 et seq. Ark. Stats.); and also (b) certain rulings of the Trial Court.

The Clark County Library (hereinafter called "Library") is owned and operated by Clark County, Arkansas; and during the times here involved the Library was insured by appellant, Aetna Casualty and Surety Company (hereinafter called "Aetna") against liability for damages arising from the operation of a bookmobile.[1] The appellee, Miss Melrose Brashears, was employed by the Library in distributing and collecting the books transported by the bookmobile. In September, 1953, while James Sherwood was engaged in driving the bookmobile on a public highway in Clark County, and while Miss Brashears was riding in the bookmobile in connection with her duties, the bookmobile left the highway and overturned, and Miss Brashears suffered serious injuries, the nature of which is not questioned on this appeal.

Miss Brashears filed this as a direct action against Aetna, claiming that her injuries had been caused by the negligence of the Library in (a) permitting an unsafe vehicle (bookmobile) to be operated on the highways; and (b) in permitting the vehicle to be driven by an incompetent driver.[2] Aetna, as the only defendant, filed a general denial, and also claimed (a) that the action could not be maintained; and (b) that the said Act 46 was unconstitutional. Trial resulted in a verdict and

---

[1] In the addenda section to Webster's New International Dictionary, printed in 1956, the word "bookmobile" is defined: "An autotruck with shelves of books serving as an itinerant library or bookstore." Clark County used its bookmobile to distribute and collect books throughout the entire County.

[2] Miss Brashears also alleged that James Sherwood was guilty of gross negligence in the operation of the vehicle, but the negligence of Sherwood was ruled out by the Trial Court and is involved only in the cross-appeal.

judgment for Miss Brashears for $6,000; and Aetna has appealed, presenting here thirteen points which we will group and discuss under suitable topic headings.

I. *Act* 46 *Of* 1947. Appellant says: (a) ''The court erred in refusing to hold, as a matter of law, that § 66-517 was unconstitutional as far as applying to the case at bar . . .''; and (b) ''The exclusions set forth in the policy show conclusively that appellee was not entitled to recover under the policy.'' Appellant argues that the Library, as a part of Clark County, could not be held liable for damages[3], and the appellant should not be required to pay anything to the appellee, since the policy only insured the County against being required to pay out money. Appellant also says that the Act is unconstitutional because it undertakes to make the appellant liable to pay out money on a contract different from the contract that the appellant issued to Clark County.

We see no merit whatever in the appellant's contentions under this topic. It is unquestioned that Aetna issued to the Library an automobile liability policy; and it is unquestioned that the Library is owned and operated by Clark County. Here are portions of the said Act 46, germane to this case:

''Section 1. When liability insurance is carried by any . . . subdivision . . . of the State . . . not subject to suit for tort, and any person . . . suffers injury or damage . . . on account of the negligence or wrongful conduct of any such . . . subdivision, its servants, agents or employees, acting within the scope of their employment or agency, then such person . . . so injured or damaged shall have a direct cause of action against the insurance company . . . with which said liability insurance is carried to the extent of the amount . . . provided for in said

---

[3] On page 213 of the transcript, the appellant's attorney said: ''. . . this suit was against Clark County, and one of the terms of the policy sued on specifically said that the defendant was only liable for the legal damages that Clark County would be required to pay. Since the County cannot be sued, this issue should not have been submitted by the Court at all.''

policy of insurance . . . and such insurer shall be directly liable to such injured person . . . for such damages to the extent of such coverage . . . and the plaintiff . . . may proceed directly against said insurer regardless of the fact that the actual tort-feasor may not be sued under the laws of this State.''

Section 2 provides that the injured person is entitled to be informed of the name of the insurance company and the terms of the policy.

Section 3 provides:

''. . . the terms and provisions of this Act shall become a part of any insurance policy so carried, regardless of the terms of the policy itself, and any limitation in any such policy restricting the right to recover to a judgment first being obtained against a tort-feasor not subject to suit shall be absolutely void and of no effect.''

In 1 Arkansas Law Review, at page 215, there is a comment by Honorable Robert A. Leflar on said Act No. 46, from which we copy:

''Act 46 is intended to give some relief against the non-liability in tort of units and agencies of the State government and similar tort-exempt groups. The old English maxim that 'the King can do no wrong,' meaning that he could not be sued however much wrong he did, has been carried forward not only into the common law but into the Arkansas Constitution (Art. V, Sec. 20) which reads 'The State of Arkansas shall never be made defendant in any of her courts.' This governmental non-liability extends as well to the lesser units of government, such as school districts, counties, cities and the like, and improvement districts. It has even been extended to organizations other than agencies of government, such as non-profit co-operative corporations. The beneficiaries of this rule are not legally liable for injuries inflicted by the negligent operation of their fire wagons, school busses and garbage trucks, though the Standard Oil Company or any other employer would be liable for injuries inflicted under similar circumstances. The injured person's only remedy against the State is to

petition for an act of grace from the State Claims Commission, and even that remedy is unavailable[4] in the case of local units and agencies . . .

"Section 3 of the Act, however, operates prospectively, by providing that the terms of the Act shall become a part of all liability policies written for such tort-exempt agencies. This poses an interesting problem of third party beneficiary contracts. It has generally been agreed that the State can by statute permit its lesser agencies to be sued either in tort or contract, though such permission has not generally been given in Arkansas. Act 46 may be deemed a sort of indirect permission, whereby the agency is allowed to contract for such suits to be brought, not against itself, but against its contractual representative who is indemnified by premiums paid to the representative by the agency. As to contracts hereinafter made, it is possible that this device may be held to be effectual to give a cause of action to injured persons."

By said Act No. 46 the Legislature recognized that in this age of school busses, bookmobiles and other services rendered by State sub-divisions, and not dreamed of at the time of the adoption of the Constitution in 1874, it should be made possible for a State subdivision to carry some form of insurance to compensate anyone who might suffer damages through the negligence of the said State subdivision, or its servants, acting in the scope of their employment. So the Legislature duly adopted Act No. 46 of 1947, and Clark County — that is the Library — in 1952 paid the appellant the premium on the policy here involved; and the Act No. 46 says that the Statute is made a part of the policy and prevails over any language or fine print in the policy. Such a statutory provision is valid and enforceable as regards policies written after the effective date of the Statute. *Liverpool & London & Globe Ins. Co., Limited,* of Liverpool, England, v. *Payton,* 128 Ark. 528, 194 S. W. 503; *Barnett Bros.* v. *Western Assur. Co.,* 143 Ark. 358, 220 S. W. 465; *Fire-*

---

[4] In the comment in 1 Arkansas Law Review there are footnotes citing cases designed to support the various statements.

*men's Ins. Co.* v. *Little,* 189 Ark. 640, 74 S. W. 2d 777; and *Continental Casualty Co.* v. *Shankel,* 88 Fed. 2d 819.

The appellant makes the contention that, since Clark County could not be sued by the plaintiff, therefore, the appellant should not be sued either. Yet the appellant accepted premium money from Clark County to afford some sort of protection to somebody. If what the appellant urges is true and Clark County could not be sued, then what did the appellant give Clark County in return for the premium money? The Act 46 answers that question. Notwithstanding the fact that the provision of the policy is to indemnify Clark County for money it may pay out, the Act No. 46 says that the purpose of the policy was to afford a recovery by the injured person against the insurance company, the same as if the injured person could have sued Clark County.

There are many cases which recognize the power of a State to authorize a State subdivision to purchase insurance protection, just as in the case at bar. See *Michael* v. *St. Paul Mercury Indemnity Co.* (Ark.), 92 Fed. Supp. 140, involving our Act No. 46; *Baker* v. *Lagaly* (10th Cir.), 144 Fed. 2d 344, involving the Oklahoma Statute; and *Taylor* v. *Knox County,* 292 Ky. 767, 167 S. W. 2d 700, 145 A. L. R. 1333, involving the Kentucky Statute. In 145 A. L. R. 1336 there is an Annotation on the point. In some States, the suit is first against the State subdivision to liquidate the claim and then payment is compelled against the insurance company in a separate suit. See *Schulte* v. *Hartford Co.,* 102 Fed. Supp. 681, involving the Minnesota Statute. But in Arkansas, the Legislature authorized a direct proceeding against the insurance company, just as here. The appellant issued the policy in the light of our Statute and is bound by it; so there is no merit to the appellant's contentions under this topic.

II. *Assumed Risk And Contributory Negligence.* The appellant says: "The Court should have instructed the jury to find for the defendant after the introduction of all of the evidence because (a) plaintiff assumed the

risk, and (b) plaintiff was guilty of contributory negligence."

The law is well settled that whenever a fact question is made on assumption of risk or on contributory negligence, then such issue or issues should be submitted to the jury. On assumption of risk see *St. L. I. M. & S. Ry. Co.* v. *Hawkins,* 88 Ark. 548, 115 S. W. 175; and other cases collected in West's Ark. Digest, "Master and Servant," § 286 (1). On contributory negligence, see *Oviatt* v. *Garretson,* 205 Ark. 792, 171 S. W. 2d 287; and other cases collected in West's Ark. Digest, "Negligence," § 136 (26). There was substantial evidence that the bookmobile was top-heavy and that this fact was known to the Library. Likewise, there was substantial evidence that the brakes had not been working properly and that this fact was known to the Library. Again, there was substantial evidence that the Library failed to make a sufficient investigation of the driver who had charge of the vehicle at the time it overturned. In short, there was sufficient evidence of the charges of negligence to carry them to the jury.

The evidence showed that Miss Brashears was a student, working for the Library in order to attend Ouachita College; that at the time of the accident, was was 21 years of age and had been self-supporting since she was eight years old; that her work on the bookmobile was to check out and receive books at the various places in the County; that she had no driver's license, never had one, had never driven a car, had never bought parts for a car, had never fixed a flat tire, and ". . . knew nothing on earth about automobiles except just riding in one." In the light of this testimony, it could not be said as a matter of law that she assumed the risk of the unsafe vehicle, or that she was guilty of contributory negligence when she did nothing but ride — not drive — in the bookmobile, at the direction of her employer. Her testimony made a case for the jury on assumption of risk and contributory negligence.

III. *Rulings In The Course Of The Trial.* The appellant has (a) one assignment relating to the Court's

statement of the case, (b) one assignment on the admission of evidence, and (c) eight assignments on instructions given or refused.

(a) In stating the case to the Jury, the Court said:

"Miss Brashears bases her plea for recovery upon the following allegations of negligence:

1. She contends the Bookmobile was in a 'run-down' and generally unsafe condition.

2. She contends the braking system was defective and caused the vehicle to veer sharply to the right when applied.

3. She contends the truck was loaded 'top-heavy' with books, making it unsafe to operate.

4. She contends that Sherwood was an incompetent, inexperienced and reckless driver and that the library was negligent in employing him.

5. She contends that the library officials negligently failed to acquaint Sherwood with the unsafe condition of the truck."

We find nothing wrong with the Court's statement. It had been testified: that the bookmobile was a 1947 Ford panel truck converted into a bookmobile by installing shelves; that when the books were on the shelves the vehicle was top-heavy; that the brakes had been defective; that two tires had been replaced; and that no substantial inquiry had been made as to Sherwood's ability to drive such a vehicle. In short, Miss Brashears and her witnesses had offered evidence on each of the numbered items; and the Court fairly listed her allegations.

(b) As regards the assignment on the evidence: when Miss Brashears was testifying, the following occurred:

"Q. When you got in the vehicle on September 9th, did you assume that the vehicle had been repaired?

A. I assumed the brakes were fixed."

The appellant duly objected to the question and answer; but we find no merit to the objection. Miss Brashears had testified that on September 8th the bookmobile had a blow-out, that two casings were ruined, and that there had been trouble with the brakes. She testified that two new casings were purchased, and that the bookmobile was taken to a garage the afternoon of September 8th; and then she was asked the question quoted above. In the light of the evidence about taking the vehicle to the garage, the purchase of new tires, and Miss Brashears' lack of knowledge about motor vehicles, certainly the ruling on the quoted question and answer was proper.

(c) As regards instructions: it would unduly prolong this opinion to discuss in detail each of the assignments regarding instructions given and refused. We have examined each and all of such assignments and find no ground for reversal.

IV. *Appellee's Cross-Appeal.* The appellee has cross-appealed because the Court refused to allow the jury to consider any claim the appellee might have that was based on the negligence of the driver of the vehicle. Since we are affirming the case on direct appeal, it is unnecessary for us to express any opinion concerning the cross-appeal.

Affirmed on direct appeal.

## OPINION ON REHEARING

ED. F. McFADDIN, Associate Justice. We are asked by appellant to clarify our opinion in regard to the insurance coverage. Appellant says that some language in the opinion leaves the impression that appellant was held liable under the policy here involved as though it were a Workmen's Compensation policy. We did not intend for the opinion to leave any such impression. The policy involved in this case was an automobile liability policy; and Miss Brashears recovered just as though she was a third person entirely unemployed by the library. The matter

of any exclusion applying because Miss Brashears was an employee of the library, was not an issue and therefore was not determined by the opinion.

Re-hearing denied.